GEORGE E. BLACK *et al.* Appellees, *vs.* JARED A. JONES *et al.* Appellants.

*Opinion filed October 16, 1914.*

1. WILLS—*in construing wills the court endeavors to give effect to intention of the testator.* In construing wills the constant effort of the court is to give effect to the true intention of the testator as expressed by the language used in his will, and this is to be ascertained from a consideration of the will in all its parts, bearing in mind the scope and plan of the testator as expressed in the whole will.

2. SAME—*presumption that words are used in technical sense is not conclusive.* The presumption that words employed in a will are used in their technical sense is a mere rule of construction to aid the courts in ascertaining the testator's intention where the language is obscure, and it is not resorted to where its application will defeat the intention of the testator as expressed in the whole will.

3. SAME—*word "heirs" will not always be given its technical meaning.* The word "heirs," in its technical, legal sense, means those whom the law appoints to take the intestate estate, but if it is apparent the word was not used in its strict technical sense it will be given such meaning as will carry out testator's intention.

4. SAME—*when term "heirs-at-law" will not include the widow.*
Where a will gives the testator's personal estate to his widow absolutely, gives her the fee in the homestead premises, and then creates a trust in the remaining real estate for the purpose of paying the income to the widow for life and at her death the trust estate to be conveyed to "my heirs-at-law living at the time of my death," the word "heirs-at-law" will be held to include only the testator's heirs-at-law by blood and will not include the widow, particularly where the body of the trust estate was expressly made exempt from any debts or liabilities created by her. (*Downing* v. *Grigsby,* 251 Ill. 568, distinguished.)

APPEAL from the Circuit Court of Douglas county; the Hon. SOLON PHILBRICK, Judge, presiding.

CATLIN & CATLIN, JOHN H. CHADWICK, and G. F. TAYLOR, for certain appellants.

CHARLES G. ECKHART, and W. W. REEVES, (GREEN & PALMER, and ORIS BARTH, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On September 6, 1912, appellees, George E. Black and Andrew J. Fonner, filed their bill in chancery in the circuit court of Douglas county, Illinois, against appellants, for the purpose of procuring a construction of the will of John J. Jones, deceased, a former resident of that county, who died testate on October 15, 1893, leaving a last will and testament bearing date October 5, 1893, which was duly admitted to probate in the county court of Douglas county on the 14th day of November, 1893. Both original and cross-bills were filed by the parties in interest, to which answers and replications were filed, and the cause was referred to the master in chancery to take the proofs and report his conclusions as to the law and facts. The master made his report, finding that the widow of the testator was not meant to be included in the term "my heirs-at-law living at the time of my death," to whom the remainder of the real estate was directed to be conveyed by the fifth clause of the

will upon the death of the widow, and excluded her heirs from any interest in the real estate so devised therein. Exceptions were filed to the master's report, which were overruled and a decree entered approving the master's report, from which an appeal.has been prosecuted direct to this court by appellants, John L. Ketcham, Henry B. Ketcham, Kate M. Ketcham, Lewis Ketcham and John L. Ketcham, trustee, on the ground that a freehold is involved.

There is no dispute as to the facts, the only question being as to the application of the law to the facts as found and reported by the master.

The will of the testator, after providing for the payment of his just debts, funeral expenses and $100 to the nurse who attended him during his last illness, is as follows:

"*Third*—I give and bequeath to my beloved wife, Lizzie K. Jones, all the personal property of which I may die seized after the payment of my just debts, funeral expenses and the legacy hereinbefore provided for. This bequest shall be held to include all interest in any partnership unsettled at the time of my death.

"*Fourth*—I give and devise to my wife, Lizzie K. Jones, in fee, the house and lot in Tuscola, Douglas county, Illinois, now used and occupied by us as a homestead, meaning and intending hereby to give to my said wife all the land owned by me in the east half of the block in which our said home is situated. I also give and devise to my said wife, in fee, all the land in the west half of said block in which our home is situated, being all of said west half except the north part thereof, now owned by one Goodspeed.

"*Fifth*—I give and devise all the rest, residue and remainder of my real estate, of every kind and character and wherever situated, to Charles W. Woolverton, in trust, nevertheless, for the following purposes, to-wit: Said trustee shall have absolute possession and control of said real estate; shall collect all rents, issues and profits arising therefrom; shall lease the same on such terms as to him shall

seem best, and out of the income arising therefrom shall pay all taxes and such repairs as he may see fit to place thereon; shall retain as his full compensation therefor the sum of ten per cent of the gross receipts arising from said real estate, and shall pay the net proceeds thereof to Lizzie K. Jones from time to time, as the same shall be collected; and I further provide, and this trust is created upon the express condition, that no part of the real estate, nor the rents, issues or profits arising therefrom, shall under any circumstances be held liable for any debts or liabilities, of any character, of the said Lizzie K. Jones, and no judgment or lien of any character against the said Lizzie K. Jones shall ever be a charge or lien upon the premises, or the income therefrom, hereby conveyed in trust. I further direct that upon the death of my said wife, Lizzie K. Jones, all the trust estate created by this will shall be by my said trustee conveyed to my heirs-at-law living at the time of my death, they to take the same *per stirpes* and not *per capita*. In case of the death, disqualification or refusal to act of the said trustee, Charles W. Woolverton, .............. is hereby created successor in trust, with all the rights, powers, duties and responsibilities devolving upon said trustee under the terms of this will."

The testator appointed his wife, Lizzie K. Jones, executrix of said will.

It appears from the pleadings and proofs that the widow received under the will the household furniture, etc., of the value of about $2000; the interest in the banking firm of Baughman, Bragg & Co., of the value of about $18,000; real estate in the city of Tuscola, constituting the homestead and lands adjacent thereto, worth about $4500; and the rents, issues and profits from the lands devised in the fifth clause of the will, amounting to about $3200, annually, from the year 1893 to and including the year 1909, making a total in rents received of approximately $54,000; that Charles W. Woolverton, the trustee named in the will, quali-

fied as such and entered into and continued in the possession of said real estate, as such trustee, until his death, on November 10, 1895; that upon his death a petition was filed in the circuit court for the appointment of a new trustee, and J. Alfred Sloan was appointed his successor in trust; that the title to the trust estate was conveyed to him by proper deeds of conveyance, and he continued to act as such trustee until March 28, 1901, when he resigned his trust and John L. Ketcham was appointed his successor in trust, to whom the trust estate was in turn conveyed; that the said Ketcham continued to act as trustee until the death of the widow, Lizzie K. Jones, on December 22, 1909, leaving her surviving as her only heirs-at-law, her brothers, Henry B. Ketcham and John L. Ketcham, a sister, Kate M. Ketcham, and a nephew, Lewis Ketcham, the only child of a deceased brother, William S. Ketcham; that the testator died leaving him surviving neither a father nor mother, nor child or children, nor descendants of a deceased child or children, but left him surviving Lizzie K. Jones, his widow, Jared A. Jones, a brother, Margaret A. Benson, a sister, Lucinda J. Stringer, a niece, and Ebon M. Jones and John I. Jones, his nephews; that on August 14, 1908, John I. Jones died intestate, leaving no widow but leaving surviving Virginia E. King, Samuel E. Jones, Johnnie F. Page, Thomas K. Jones, Cleveland T. Jones and Emma A. Jones, his children and only heirs-at-law.

On April 28, 1910, John L. Ketcham, as such trustee under the will, conveyed the lands devised by the fifth clause thereof to Lucinda J. Stringer, Margaret A. Benson and Jared A. Jones, each an undivided one-fourth interest; to Ebon M. Jones an undivided one-eighth, and to Virginia E. King, Samuel E. Jones, Johnnie F. Page, Thomas K. Jones, Cleveland T. Jones and Emma A. Jones an undivided one-eighth interest. On August 30, 1911, all of the parties above named, with their respective spouses, as sole surviving heirs and devisees under the last will and testa-

ment of John J. Jones, deceased, conveyed all the lands in question to Andrew J. Fonner and Thomas N. Smith for the sum of $114,684. Thomas N. Smith conveyed all of his interest in the lands in question to appellant George E. Black, and on March 1, 1912, said Fonner conveyed a one-half interest in that part of the lands owned by him to said Black, who now owns more than 484 acres of this land and has made improvements thereon amounting to approximately $18,000.

The court found that to entitle a person to share in the trust estate under the terms of the will he must be capable of taking as a grantee in the conveyance to be made by the trustee after the death of the widow, Lizzie K. Jones; that the trust estate must pass by a deed of conveyance made after her death to a class of persons who were heirs of the testator at the date of his death and also at the date of the death of his widow, Lizzie K. Jones, so as to be capable of taking as grantees in the deed of conveyance from the trustee of the trust estate; that his widow, Lizzie K. Jones, deceased, did not fall within the class of heirs-at-law of the testator who were living at the date of his death and who would be living at the date of the death of his widow, and that from a consideration of the whole will, including the provisions made for the widow during her lifetime and the fact that the conveyance was not to be made until after her death, it showed a clear intention on the part of the testator that she should not share in the estate as one of the grantees in the conveyance required to be made by the trustee under the will, and that while the widow was one of the heirs of the testator by a strict construction of the language of the will, still, since the conveyance was not to be made until after her death and she could not therefore be in existence to receive the gift as grantee in the deed of conveyance required to be made by the trustee under the terms of the will, whatever interest the will technically provided should go to her as an heir

lapsed by reason of her death. The court ordered that by the true construction of the will the trust estate created by the will was given at the death of said Lizzie K. Jones to the heirs-at-law of said testator, John J. Jones, as hereinbefore set forth, and taxed the costs in the case to appellees, George E. Black and Andrew J. Fonner, complainants in the original bill.

Appellees contend that since the evidence shows that the will was drawn by Charles W. Woolverton, a lawyer of experience, the words "my heirs-at-law," used in the fifth clause of the will, in which the real estate is devised in trust, with directions "upon the death of my said wife, Lizzie K. Jones, all the trust estate created by this will shall be by my said trustee conveyed to my heirs-at-law living at the time of my death, they to take the same *per stirpes* and not *per capita,*" are to be taken in their strict legal and technical sense as including all those upon whom the law would cast the inheritance in case the testator had died intestate, and therefore they included the widow, citing *Crabtree* v. *Dwyer,* 257 Ill. 101, *Smith* v. *Winsor,* 239 id. 567, and *Carpenter* v. *VanOlinder,* 127 id. 42, which hold that where technical words are used in a will they are presumed to have been used in their technical sense or meaning. This is no doubt true, but it is only a presumption adopted as a rule of construction for the purpose of aiding the courts in ascertaining and giving effect to the true intention and meaning of the testator where the language used renders its meaning or his intention obscure. It has never been resorted to where to do so would be to defeat the intention of a testator as expressed in his will, except in those rare cases where to have held otherwise would have contravened some well established and positive rule of law.

It is fundamental that in construing wills the constant effort of the court is to give effect to the true intention and meaning of the testator as expressed by the language used in his will, and this is to be ascertained from a considera-

tion of the will in all of its parts and details, bearing in mind the scope and plan of the testator as expressed by the whole will. (*Heisen* v. *Ellis,* 247 Ill. 418; *Harrison* v. *Weatherby,* 180 id. 418; *Whitcomb* v. *Rodman,* 156 id. 116; *Leary* v. *Kerber,* 255 id. 433; *Mettler* v. *Warner,* 243 id. 600.) It is equally true that cases frequently occur in which the established rules and precedents of a more technical character are of little or no value in ascertaining the intention of the testator. (*Leary* v. *Kerber, supra; Robinson* v. *Martin,* 200 N. Y. 159.) In the latter case it is said: "Precedents and rules frequently have but slight value in interpreting wills, for those instruments are rarely, and in the nature of things are not likely to be, similar in terms. When the testator's intention is obscure, resort to them may be helpful in ascertaining it. Where, upon inspection of the will and upon a consideration of the relevant facts and circumstances, an intent is apparent, all rules to the contrary must yield, provided the intent does not offend against public policy or some positive rule of law." By this intention is meant the actual, personal, individual intention of the testator, and not merely the presumptive or speculative one that may be inferred from the use of set phrases, formal words or technical words and phrases. (40 Cyc. 1389; *Penyado* v. *Penyado,* 82 Ky. 5; *In re Tyson,* 191 Pa. St. 218.) For the purpose of giving effect to the intention of the testator the will should be construed liberally and technical words and phrases given their usual, ordinary and commonly understood meaning, when to do so will not violate some rule or positive law of property or settled principle of public policy. (40 Cyc. 1389; *Mills* v. *Teel,* 245 Ill. 483.) Guided by these cardinal rules of construction, it becomes important to ascertain the meaning and effect of the phrase, "my heirs-at-law living at the time of my death," used in the fifth clause of the will.

The word "heirs," in its legal sense, means those whom the law appoints to take the intestate estate, and unless

restrained or qualified by the context of the will is always given that meaning. In ordinary use, however, it is frequently given a more limited sense. (*Smith* v. *Winsor, supra.*) And since the purpose of construing a will is to give effect to the intention of the testator as gathered from the four corners of the will, whenever it is apparent that technical words and phrases were not used in their strict technical sense, that meaning should be given to them which will carry out the intention of the testator. (40 Cyc. 1398; *Winchell* v. *Winchell,* 259 Ill. 471.) In 21 Cyc. 416, it is said: "'Heir' is a legal term and is used in a legal sense, with a fixed legal meaning. The word has a technical signification, and when unexplained and uncontrolled by the context must be interpreted according to its technical sense or its legal import. But the word, notwithstanding its primary and well understood meaning, is susceptible of more than one interpretation, and has, in law, several significations under different circumstances, and the word 'heir,' as frequently happens, is not used in any exact or technical way. The signification of the word is in all cases a question of intention." In 40 Cyc. 1464, it is said: "The word 'heirs' in a will, when applied to real estate, primarily means persons so related to one by blood that they would take the estate in case of intestacy, and when applied to personalty primarily means next of kin or those persons who would take under the Statute of Distribution in case of intestacy. * * * Where the gift consists of both real and personal estate the word 'heirs' will ordinarily be construed as 'legal heirs' or 'heirs-at-law' as to the real estate and 'next of kin' or 'distributees' as to the personal estate."

At common law an heir "is he upon whom the law casts the estate immediately upon the death of the ancestor." (2 Blackstone's Com. 201.) In *Meadowcroft* v. *Winnebago County,* 181 Ill. 504, the common law meaning of the word "heir" is stated as follows: "Heir, at common law: he who is born or begotten in lawful wedlock and upon

whom the law casts the estate in lands, tenements or here-
ditaments immediately upon the death of his ancestor." In
40 Cyc. 1463, it is said: "In its legal or technical sense
the word 'heirs' ordinarily does not include the widower of
a deceased wife, or the widow of a deceased husband,"—
citing, among others, the following cases: *Wilkins* v. *Ord-
way,* 59 N. H. 378, *Phillips* v. *Carpenter,* 79 Iowa, 600, and
*Hanvy* v. *Moore,* 140 Ga. 691. In the latter case it is said:
"No one speaking of children speaks of his wife, in con-
templation of her survivorship, as his heir, but it is believed,
and it is universal, that she is referred to as his widow and
his children as heirs." The widow's status, as such, is cre-
ated by statute, and in the general sense in which the word
is usually used and understood a widow is not spoken of as
an heir. (*Unfried* v. *Herber,* 63 Ind. 67; *McNutt* v. *Mc-
Nutt,* 116 id. 545.) In this State the widow does not take
real estate as heir where there is a child or children or
descendants of a deceased child or children. (Hurd's Stat.
1913, chap. 39, sec. 1, par. 4.)

The phrase "heir-at-law" is commonly and rightfully
used to indicate the heirs at common law,—the next of
kin by blood. (21 Cyc. 427; *Meadowcroft* v. *Winnebago
County,* and *Smith* v. *Winsor, supra.*). In the latter case it
is said: "It has frequently been held by this court that the
word 'heirs' in a will does not necessarily have a fixed
meaning. It may mean children. If it may mean children,
it may also, where there are no children, mean some other
one class of heirs, (not including all the heirs,) if the
context of the entire will plainly shows such to have been
the purpose of the testator. In the construction of a will
greater latitude is allowed than in the construction of a
deed, (*Webbe* v. *Webbe,* 234 Ill. 442,) and while, as above
stated, the technical meaning of the word is the one which
*prima facie* should prevail, yet such meaning will not be
given effect to the extent of defeating an obvious general
intention of the testator. (*Blackmore* v. *Blackmore,* 187

Ill. 102; *Johnson* v. *Askey,* 190 id. 58.) 'Heirs' and 'heirs-at-law' are in a legal sense the same. In this case we are satisfied, from all the words used in this will, that the general scheme or intention of the testator was that his heirs-at-law who were of his blood should have such portion of his property as remained after the death of himself and wife. It seems plain to us that the words 'heirs-at-law' were used by the testator in their colloquial or popular meaning and not in their technical sense. This excludes the wife." The same intention is apparent from a consideration of the general plan and scheme of the testator in this case. By the third clause the testator gives to his wife, absolutely, all of his personal property, including his interest in the banking firm of Baughman, Bragg & Co. By the fourth clause she is given the homestead in Tuscola, together with all the remainder of the block upon which the homestead stood, except that part owned by one Goodspeed. The devise is in fee simple absolute, and no reason is perceived why, if it was his intention, also, that she should have an undivided one-half interest in fee in the remainder of his real estate, the same was not included in this clause instead of in the fifth clause, wherein the fee was devised to a trustee, with direction that she shall have the rents, issues and profits thereof, but under no circumstances should the trust property, or the rents, issues and profits arising therefrom, be held liable for any debts or be subject to any judgment or lien against her, and that upon her death the fee shall be conveyed to "my heirs-at-law living at the time of my death." This provision is wholly inconsistent with any intention on his part she should also have the fee simple title in an undivided one-half interest in the property thus devised in trust. No possible reason can be perceived for such provision. The absolute gift of all of the personal property, including the interest to the extent of $18,000 or more in the banking business of Baughman, Bragg & Co., forbids the assumption that it was based upon any fear of

lack of business ability and capacity on·her part to properly manage and safeguard her interests. Had that been the object in creating the trust in the fifth clause, the same reason would have applied with equal force to the personalty and homestead and should have prompted him to make a like provision in relation to the personal property, as it is a matter of common knowledge and experience .that the safeguarding and investing of large sums of money require equally as much, or more, ability and business experience than do the renting and managing of real estate. And while it is true that a devise by will to one for life, with remainder over in fee to a class which will include the life tenant, does not necessarily create a presumption that the life tenant is to be excluded from taking any interest in the fee, (*Downing* v. *Grigsby,* 251 Ill. 568; *Smith* v. *Winsor,. supra; Cushman* v. *Arnold,* 185 Mass. 165; 70 N. E. Rep. 43; *Kellett* v. *Shepard,* 139 Ill. 433; *In re Swan's Estate,* 23 Atl. Rep. 599; *Holloway* v. *Holloway,* 5 Ves. Jr. 399;) as was pointed out in *Downing* v. *Grigsby, supra,* this rule has never been applied in a case in which the life estate and the remainder over are both created in the same clause in the will.

We think, from a careful consideration of the whole will ·and the plan, scope and general scheme of the testator as disclosed therein, it is apparent that the object of the testator in creating the trust in the fifth clause and giving his widow the income derived therefrom for life, and further providing that the body of the trust estate should not be liable, under any circumstances, for any debts or liabilities created by her, was for the purpose of excluding her from any other interest in the property devised except the use, rents and profits as therein provided, and of preserving the body of the same for his heirs-at-law by blood and their descendants living at the time of his death. This being the intention apparent from a consideration of the whole will,

the words "my heirs-at-law" therein used must be held to have been used in their commonly understood and colloquial meaning, and as intended to include only his heirs-at-law by blood and not his widow.

For the reason given, the decree of the circuit court will be affirmed.

*Decree affirmed.*