(No. 11988.—Reversed and remanded.)

LUELLA BELLE JONES, Appellee, *vs.* DOUGLAS MILLER, Appellant.

*Opinion filed April 17, 1918.*

1. WILLS—*"heirs" must be alive at time of death of the ancestor.* A person's "heirs" are those upon whom the law casts the estate immediately upon the death of the ancestor, and they must, to answer the description, be alive at the time of the ancestor's death.

2. SAME—*when words will not be given their literal meaning.* If it appears from a consideration of the whole will that to construe the language literally will render one or more words or clauses meaningless and defeat the manifest intention of the testator, such construction will not be adopted but effect will be given to the testator's intention.

3. SAME—*what is meant by "intention" of the testator.* The "intention" of the testator is his actual intention as gathered from the entire will, and not that intent which may be inferred or presumed from the use of formal words, set phrases or technical words.

4. SAME—*when word "heirs" may be construed to mean "children."* For the purpose of carrying out the manifest intention of the testator the word "heirs" may be construed to mean "children."

5. SAME—*vested and contingent remainders defined and distinguished.* A remainder is vested when it is limited to determinate persons, to take effect in possession immediately upon the determination of the particular estate, and is contingent when it is limited to take effect upon an uncertain event or to an uncertain person, and it is the uncertainty as to the right to take the property, and not as to the enjoyment of it, that distinguishes a contingent from a vested remainder.

6. SAME—*courts favor the vesting of estates.* Courts favor the vesting of estates, and in case of doubt will favor that construction which will vest a remainder at the earliest opportunity.

7. SAME—*whether remainder is vested or contingent is determined by testator's intention.* Whether a remainder is vested or contingent in a given case depends not alone upon the language used in creating such remainder, but also upon the intention of the testator as disclosed from a consideration of the whole will.

8. SAME—*effect where remainder is to certain persons or their survivors.* A devise or gift to certain persons or their survivors after the determination of a particular estate will take effect and vest only in those who survive the determination of the particular estate and answer the description at that time.

9. SAME—*what indicates intention to create contingent remainder.* Where a testator gives his wife a life estate and provides that after her death and after his youngest child becomes of age the estate shall be sold and the proceeds divided among his surviving children and the children of any child who may have died, the fact that the distribution is postponed, not only to let in the particular estate but also because of the minority of the youngest child, indicates an intention to create a contingent remainder.

APPEAL from the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding.

REDMON, HOGAN & REDMON, for appellant.

WILEY & MOREY, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an appeal by Douglas Miller from a decree of the circuit court of Macon county awarding appellee, Luella Belle Jones, an undivided one-seventh interest in the proceeds to be derived from the sale of a tract of land described as the east half of the east half of section 15, in township 18, north, range 2, east, in that county, and ordering a sale of the same and a division of the proceeds of such sale on that basis, and that appellant account to her for one-seventh part of the rent and income of such premises from December 24, 1904.

There is no controversy as to the facts. September 14, 1886, Joseph Jones departed this life testate, seized and possessed of the lands above described and other lands in Macon county. He left him surviving Mary Jones, his widow, and Joseph K., Charles L., Edward H. and Frederick H. Jones, Emma Rorick, Sarah L. Sayre and Charlotte Fawkes, his children and heirs-at-law. By his last will he appointed his widow and his sons Joseph K. and Charles L. as his executors. The will was duly admitted to probate in the county court of Macon county and letters testamentary issued thereon to his widow and his son Charles L. The will

is dated February 3, 1883. At the time the will was drawn
the son Frederick H. was twenty years of age. The con-
troversy in the case arises as to the proper construction of
the ninth clause of the will, which is as follows:

"*Ninth*—I give, devise and bequeath unto my beloved
wife, Mary Jones, all my real estate and personal property,
of every name and nature whatsoever, for her support and
maintenance during her natural life, after paying the debts
and legacies above mentioned, with the privilege of selling
any part or all of the real estate owned by me except the
east half of the east half of section 15, township 18, range 2,
east, Macon county, State of Illinois; and after the death
of my beloved wife, Mary Jones, and Frederick H. Jones
becomes of age, all of the real estate owned by me shall be
sold and the proceeds thereof be equally divided between
the living heirs, or if deceased, their children, the children
to receive a father and mother's part."

Appellee is the widow of Frederick H. Jones, who de-
parted this life intestate on June 4, 1900, leaving him sur-
viving his widow but no child or children or descendants
of any deceased child. He was thirty-seven years of age at
the time of his death, having attained his majority in 1884.
On April 23, 1902, Mary Jones and Charles L. Jones, as
executors of the estate of Joseph Jones, executed their deed
conveying to appellant the land in controversy. This deed
recited that it was made "by virtue of the power and au-
thority to them given in and by the last will and testament
of Joseph Jones, deceased," and "by and with the knowl-
edge, consent and direction of each of the legatees, devisees
and heirs-at-law of the estate of the said Joseph Jones, de-
ceased." At the same time each of the living children of
the testator, and their respective spouses, joined in a war-
ranty deed conveying to appellant the land in controversy.
This deed contained the recital that it was made "in rati-
fication and confirmation of a deed to said grantee herein
by Mary Jones and Charles L. Jones, executors of the last

will and testament of Joseph Jones, deceased." Appellant
entered into possession of the land under said deeds and
ever since that time has been in the open and exclusive pos-
session of the land and paid all taxes legally levied and
assessed against the same.

The cause was referred to the master in chancery to
take the proofs and report his conclusions as to the law
and facts. The master made his report finding the facts
substantially as above stated. He further found that the
gifts to the children in the ninth paragraph of the will were
bequests of personal property and not a devise of real es-
tate; that it was the intention of the testator that the land
should be sold at the death of the widow and when his son
Frederick H. attained his majority and the proceeds of sale
be divided equally among the children of the testator living
at that time, the children of a deceased child or children to
take their parent's share; that by the death of Frederick
H. Jones childless during the pendency of the life estate
and by the deeds of the widow and children of the testa-
tor appellant became seized in fee simple of the real estate
in controversy and that appellee has no interest in the same,
and he recommended that her bill be dismissed for want
of equity.

Appellee filed exceptions to the master's report, which
were sustained, and a decree was entered finding the estate
created by the words in the latter part of the ninth clause
of the will to be a vested remainder in the children of the
testator living at the time of his death; that such estate
could not be lawfully sold until the determination of the
particular estate, and that upon the death of the widow and
the son Frederick H. attaining his majority the property
should have been sold and the proceeds divided among the
heirs of the testator; that appellee took by descent a one-
seventh interest belonging to her husband, Frederick H.;
that the same should be considered as personalty and di-
vided accordingly, and that she, as his widow, was entitled

to a one-seventh part of the proceeds to be derived from such sale and appellant was entitled to the other six-sevenths of such proceeds by reason of the deeds of the other children to him, and that said land should be sold and the proceeds divided in that proportion; also that appellee was entitled to receive a one-seventh part of the rents and income from the land from the determination of the particular estate on December 24, 1904, and decreed accordingly. This appeal followed.

At the time the deeds were made to appellant Frederick H. Jones was dead, and appellee contends such deeds did not convey his interest in the land. She further contends that the remainder in fee in said land vested in the children of Joseph Jones living at the time of his death, subject to the particular estate created by the ninth clause of his will, and that as Frederick H. Jones attained his majority before the death of the life tenant, upon her death the period for distribution arrived, and appellee, as the widow of Frederick H., (he having died childless,) became entitled to his undivided one-seventh portion of the proceeds to be derived from the sale of such land. Appellant contends that the estate created in the children of the testator by the ninth clause is a contingent remainder in such of the children of the testator as survive the period of distribution and the heirs of such as had died during the pendency of such life estate leaving children, and that as Frederick H. Jones died childless before the period of distribution arrived he took no interest in such real estate nor did his widow in the proceeds to be derived from its sale; also, that he has a good title by limitation under section 6 of the Conveyances act, by possession and payment of taxes for more than seven years under the deeds from the executors and six of the surviving children of the testator.

The main question presented is as to the proper construction of the ninth paragraph of the will. Its language is peculiar. After giving to the widow a life estate in all

his property with power of sale of the same, except as to the land in controversy, it proceeds as follows: "And after the death of my beloved wife, Mary Jones, and Frederick H. Jones becomes of age, all of the real estate owned by me shall be sold and the proceeds thereof be equally divided between the living heirs, or if deceased, their children, the children to receive a father and mother's part." If this language were to be construed literally the latter words of the clause would be meaningless. A person's "heirs" are those "upon whom the law casts the estate immediately upon the death of the ancestor." (2 Blackstone's Com. 201; *Black* v. *Jones,* 264 Ill. 548.) They must, necessarily, be alive at the time of the death of their ancestor, and hence, it seems needless to say, there can never be such a thing as a child or children of a deceased living heir. The only way that any force or effect whatever can be given to this clause is by substituting the word "children" for the word "heirs," so as to read that the proceeds be equally divided among the living children, or if deceased, their children, the children to receive their parent's share.

It is fundamental in the construction of wills that the first and great rule, to which all other rules are subordinate, is that the intention of the testator as expressed in his will must prevail if not contrary to some rule of law or public policy or established rule of property. (*Wilson* v. *Wilson,* 261 Ill. 174; *Morrison* v. *Tyler,* 266 id. 308; *Dean* v. *Northern Trust Co.* 266 id. 205; *Nixon* v. *Nixon,* 268 id. 524.) This intention is to be gathered from a consideration of the whole will and all its parts, (*Black* v. *Jones, supra; McGinnis* v. *Campbell,* 274 Ill. 82;) and the various provisions are to be so construed and harmonized, if possible, as to render no word, phrase, clause, sentence or paragraph superfluous or meaningless. It follows as a corollary to this rule, that whenever it appears from a consideration of the whole will that to construe the language literally will render one or more words or clauses idle and

283 — 23

meaningless and defeat the manifest intention of the testator, such construction is to be adopted as will give effect to the manifest intention of the testator. By intention is meant the actual, personal and individual intention of the testator, and not that intent which may be inferred or presumed from the use of formal words, set phrases or technical words and phrases. Above all, it is the intention of the testator that is to control, and established rules and precedents are only to be resorted to as aids for the purpose of ascertaining this intention. When from a consideration of the whole will and the attendant facts and circumstances a clear intent on the part of the testator is manifest, all rules to the contrary must yield to such intent if it does not violate some positive rule of law or property or settled principle of public policy. (*Black* v. *Jones, supra.*) For this purpose the word "heirs" may be read "children," or *vice versa,* as the exigencies of the case may require. 21 Cyc. 426, 427; *Black* v. *Jones, supra; Smith* v. *Kimbell,* 153 Ill. 368; *Fishback* v. *Joesting,* 183 id. 463; *Kalies* v. *Ewert,* 248 id. 612; *Dunshee* v. *Dunshee,* 251 id. 405.

When the several provisions of the will of Joseph Jones are considered, it appears that the testator had already given each of his children except Frederick H. $1000, for which he held their receipts, and that by paragraphs from 2 to 7, inclusive, he directed they should each be given $100 in addition to the $1000 previously given them; also that by the eighth paragraph he gave to his son Frederick H. $1000 to be paid within one year and $100 to be paid within two years after the testator's death and when he attained his majority, and by the ninth paragraph he gave to his widow all of his property, real and personal, charged with the payment of his debts and legacies, to be hers for and during her natural life, and after her death and when the son Frederick H. attained his majority it was to be sold and the proceeds divided in the manner above stated. When these several provisions are considered together it will be

seen that what the testator really intended by the language used in the will was, that the widow should have the life use of the land in controversy, and after her death and after his youngest child attained his majority the same should be sold and the proceeds divided equally among his surviving children, and that if any child had died leaving children, the children of such deceased child or children should take his or her parent's share. This being his intention, the question presented is, what is the character of the estate in remainder created by the words expressing such intention?

Appellee contends the remainders in question are vested remainders and took effect in the surviving children immediately upon the death of the testator, while appellant contends they are contingent remainders and that the estate in remainder did not vest in the children surviving until the determination of the particular estate and after the period of distribution had arrived. The character of the remainder created is the difficult and important question in this case. A remainder is said to be vested when it is limited to determinate persons, to take effect in possession immediately upon the determination of the particular estate, (*Pingrey* v. *Rulon,* 246 Ill. 109,) and to be contingent when it is limited to take effect upon a dubious or uncertain event or to a dubious and uncertain person. (*Brownback* v. *Keister,* 220 Ill. 544.) The main thing which distinguishes a vested from a contingent remainder is its present capacity to take effect in possession in a determinate person immediately upon the determination of the particular estate. In the one case there is a person in being ascertained and ready to take with a present right of future enjoyment, while in the other there is either no ascertained person in being ready to take immediately upon the determination of the particular estate or it is uncertain whether the event upon which the estate is to vest will ever happen. It is the uncertainty of the right to take the property, and not the enjoyment of it, that distinguishes a contingent from a vested remain-

der. (*Chapin* v. *Crow*, 147 Ill. 219; *Smith* v. *Chester*, 272 id. 428.) Although such remainders are easy of definition and there is a well defined distinction between a contingent and a vested remainder, they often are not as easy of discernment as the simplicity of their definition would imply. This arises from the fact that their character is very frequently determined not alone from the particular language by which the remainder is created, but also from a consideration of the whole instrument of their creation and by the intent apparently in the mind of their creator as gathered from such instrument. It is also the general rule that courts favor the vesting of estates, and in case of doubt will favor that construction which will vest the remainder at the earliest opportunity. (*Chapin* v. *Crow, supra; Lynn* v. *Worthington*, 266 Ill. 414; *Lachenmyer* v. *Gehlbach*, 266 id. 11.) It is, however, as above stated, the intention of the creator that controls. It therefore follows that the question as to whether a remainder is vested or contingent in a given case depends not alone upon the language used in creating such remainder, uninfluenced by the other provisions of the instrument, but also upon the intention of the creator as disclosed from a consideration of the whole instrument by which the particular remainder is created.

In the present case the intention of the testator is quite clear, although the language used in expressing such intention is not the most apt or appropriate that might have been chosen for that purpose. What he had in mind was to make provision for his widow during her life and for a division of his property among his surviving children after her death, in such manner that they would all share equally in the division of such property. This he did by providing that the widow should have the use of the bulk of his property during her life, and after her death and after the youngest of his children attained his majority the balance remaining should be sold and the proceeds divided equally among his living (surviving) children, and if any of his

children had died leaving children, they should take their parent's share.   By the words "living children" the testator undertook to designate those of his children who were to participate in the distribution, and, we think, in this instance the will is to be construed the same as if the testator had used the word "surviving" instead of "living" to designate the children who were to share in such distribution of his estate.   By limiting the bequest to his living (or surviving) children the testator excluded from any participation in his estate the general heirs of any children who might die childless pending the vesting of such estate and created an estate of survivor in such of his children as might survive the period of distribution.   The general rule is, that where a testator makes a devise or gift of property to certain persons or to the survivors of them, and by the same instrument creates a particular estate and postpones the period of distribution until the determination of such prior estate, the gift or devise to such survivors will take effect and vest only in those of the class who shall survive the determination of the particular estate and answer to the description at that time.   (*Blatchford* v. *Newberry,* 99 Ill. 11; *Ridgeway* v. *Underwood,* 67 id. 419; *Schuknecht* v. *Schultz,* 212 id. 43; *Burlet* v. *Burlet,* 246 id. 563.) In *Ridgeway* v. *Underwood, supra,* the testator devised his farm and plantation on which he lived, in effect, to his wife for life, and further provided that "at the death of my wife and on my youngest child coming of age" said farm to be sold and the proceeds divided among his seven children, (naming them,) "their heirs and assigns forever," and if one or more of said seven children should die before inheriting his or her inheritance the same to be divided equally among the remainder of the seven.   It was there pointed out that most persons in drawing wills without the aid of expert legal advice assume that the persons for whom they are making provision will survive them, and hence the reasonable rule to be followed in such case is the one laid down

in Jarman on Wills, (vol. 2, 3d Am. ed. 462,) to the effect that where a gift is made to survivors and "such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and those only."

What is said in the *Ridgeway case* will control here unless the addition of the provision providing for the children of any deceased child taking their parent's share takes this case out of the general rule of construction announced. After providing for a sale of his property and a division of the proceeds among his surviving children after the death of his widow and after his youngest child attained his majority, the testator provided that if any of his children should die before the vesting of the estate leaving children, their children shall take their parent's share. The question is, did the testator by the addition of such provision change the rule as to survivorship created by the prior provisions of the will? We think not. By the addition of these words the testator did not intend that the heirs, generally, of any of his children who should die before the vesting of his estate should share in the distribution but he specifically limited such right to "their children." By the addition of these words he did not intend to alter the manner of distribution among his surviving children as to any such child or children as might die childless, so that, in so far as those provisions of his will are concerned, the intent is clear that if any child or children died without leaving children the devise to such child should not go to its heirs generally but should go to those of his children who answered to the description of "surviving children" at the period fixed for distribution. It is further to be noted that at the time this will was made the son Frederick H. was about twenty years of age, and that under the provisions of the will no distribution was to be made of the estate until such son attained his majority, also that the other specific bequests made to him were not to take effect un-

til he attained his majority, so that, so far as he is concerned, it is manifest from a consideration of the whole will that no estate should vest in him until he became of age. By the express provisions of the will no disposition of the property was to be made at the death of the life tenant unless the son Frederick H. had also attained his majority, from which it appears that the object of the testator in postponing the distribution was not only in order to let in the particular estate, but was postponed, also, for reasons peculiar to one of the devisees, which is indicative of an intent to create a contingent remainder. *Thomas* v. *Thomas,* 247 Ill. 543.

From a consideration of the whole will we have no hesitancy in saying that it was the intention of the testator that his property should be divided among his children living at the time fixed for the distribution of his estate and the child or children of such as might die during the pendency of the particular estate, and as such fact could not be ascertained until the determination of the life estate and until the son Frederick H. attained his majority, the remainders created by his will were contingent and not vested remainders, and the trial court should have so held.

For the reasons given we think the objections to the master's report should have been overruled and a decree entered approving and confirming such report and dismissing appellee's bill for want of equity.

Other questions have been raised and argued by appellant, but in view of the conclusion we have reached as to the character of the remainders created by the will in question we have deemed it unnecessary to consider them.

For the reasons given the decree of the circuit court will be reversed and the cause remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*