(No. 14742.—Decree affirmed.)

FRANK W. TUCKER *et al.* Appellees, *vs.* JUNIUS TUCKER *et al.*—(WATHEN HAMILTON *et al.* Appellants.)

*Opinion filed April 18, 1923—Rehearing denied June 7, 1923.*

1. WILLS—*intention of testator must be gathered from all parts of will.* In construing wills courts endeavor to give effect to the true intention and meaning of the testator as found from the language of the will, and this intention, if not inconsistent with established rules of law or public policy, is to be gathered from all parts of the will.

2. SAME—*the will and codicils must, if possible, stand together.* Codicils do not supersede a will but should be construed in harmony with it unless there is a clear revocation of the provisions of the will by the codicils, and the plain provisions of the will can not be taken away or modified by doubtful expressions contained in the codicils.

3. SAME—*wills are construed more liberally than deeds.* Wills are to be construed more liberally than deeds, and in construing a will the court will read it from its four corners to arrive at the intention, and the nature and ordinary meaning of words must be accepted and *prima facie* will prevail.

4. SAME—*first devisee will be construed to take estate of inheritance, if possible.* In the construction of wills, courts will, if possible and reasonable, adopt that construction which gives an estate of inheritance to the first devisee, and will adopt any reasonable construction of the will rather than hold that the testator intended to die intestate as to any of his property.

5. SAME—*when doctrine of conversion applies to residuary devise.* Where a testator devises and bequeaths all the rest and resi-

due of his property, both real and personal, to certain devisees in equal parts, and in a codicil provides that the share of one particular devisee shall be paid over by the executors to a trustee, to be invested in land for the use of said devisee, the entire devise and bequest to said devisee is to be regarded as a devise of land, and the land purchased by the trustee is to be regarded as land owned and devised by the testator.

6. SAME—*when a codicil does not reduce devise to life estate with power to alienate by will.* Where a testator, after devising a share of his residuary estate to a certain devisee, provides in a codicil that such share shall be paid over by the executors to a trustee, to be invested in land for the use of the devisee, with "power to dispose of said land only by her last will and testament," the entire devise, in the absence of other explanatory words, must be construed as giving the devisee an absolute estate in the land purchased by the trustee and not merely a life estate, with mere power of disposition by will.

7. SAME—*when heirs of devisee take legal title by Statute of Uses.* Where a will directs a trustee to purchase land for the use of a devisee and permits the devisee to elect not to live upon the land, the fact that she does not live upon the land but the trustee continues actively in its management until her death does not warrant construing the devise into a life estate, but upon her death the active duties of the trustee cease and the legal title passes to her heirs under the Statute of Uses.

8. WORDS AND PHRASES—*meaning of the word "belong."* The primary as well as the common and ordinary meaning of the word "belong" is, "to be the property of."

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

SAMPSON & GIFFIN, for appellants.

GEORGE B. GILLESPIE, and C. G. SCHROEDER, (GEORGE M. GILLESPIE, and THOMAS E. GILLESPIE, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

James H. Wathen died testate in Woodford county August 7, 1902, seized and possessed of considerable real and personal property and leaving no child or lineal descend-

ants or parents surviving him. Four sisters, Louisa Tucker, Jane Hamilton, Tennessee Hamilton and Mary E. Bell, died previous to his death, leaving children, and those children and their descendants surviving the testator were his only heirs. The testator's will was executed November 3, 1885, containing nine items, and the will and three codicils thereto were probated shortly after his death as his will. Item 1 of the will directed the payment of his debts and funeral expenses. By item 2 he devised to John Iron and his wife the lots in the city of El Paso, Woodford county, upon which they lived, for their lives and the remainder after the death of the survivor to their daughter, Bessie. By item 3 he devised to Jerry Kels and his wife for their lives the lots in said city upon which they lived and the remainder to their two sons, Jack and Jede. By item 4 he devised in fee to Fannie Pleasants two lots in said city, and by the same item bequeathed to her the sum of $500, and to Ruth Barfoot, her half-sister, the sum of $100 in money. By items 5 and 6 he bequeathed to Josephus Thompson, and Hattie, his wife, the sum of $100 each; to their daughter, Emily, $500; to Emma J. Worthington, $500; to Major, her son, the sum of $500, and to her daughter, Nellie, $100 in money. By item 7 he bequeathed to his nephew, Lloyd F. Hamilton, the sum of $40,000 in money, and in case of his death before the testator the same to go to his children in equal parts. By item 9 he named Lloyd F. Hamilton and Oscar W. Bell as his executors. Item 8 of the will, which is material in this case, is in the following words:

"*Item 8.*—All the rest and residue of my property, both real and personal, of every kind and description, not needed or required to pay the aforesaid legacies and bequests hereinbefore made, I will, devise and bequeath to my nephews and nieces, the children of my deceased sisters, Tennessee Hamilton, Mary E. Bell and Louisa Tucker, in equal parts between them, share and share alike, except that my executors shall pay one-third of the sum which would otherwise

go to my nephew Horace Bell to his former wife, Amanda Bell; and in case of the death of any of said nephews and nieces before my death, his or her portion shall go to his or her child or children in equal parts."

The first codicil to the will was executed May 2, 1896, and simply directs his executors (1) to divide among his devisees and legatees, according to the terms of his will, all United States bonds of which he may die possessed, and for the purposes of such division the bonds shall be treated as money and valued at the market price thereof at the time of the division; (2) that they collect as speedily as possible all his notes and accounts, debts and rents due or to become due and divide the proceeds of such collections among his devisees and legatees, according to the will, as soon as such collections amount to $2000 or over; and (3) that devisees or legatees indebted to him at his death shall deduct the amount of their debts from their shares as devisees and legatees.

By the second codicil, dated August 8, 1896, he first revoked and annulled the legacy of $40,000 given by his will to his nephew Lloyd F. Hamilton, and in lieu thereof he devised and bequeathed to him one-seventh of all the property, both real and personal, of which the testator might die seized or possessed after the other legacies and devises in his will are satisfied and paid, and in case of the death of Hamilton before his death he devised and bequeathed said one-seventh to his children in equal parts. The second paragraph of said codicil is the part that is material in this controversy and is in the following language:

"Upon the settlement of my estate I order and direct my executors to pay over to the said Lloyd F. Hamilton the part or share which shall belong to my niece, Anna Tucker, under the terms and conditions of said last will and testament, as trustee of the said Anna Tucker, and it shall be the duty of the said Lloyd F. Hamilton, as such trustee, to invest said part or share of the said Anna Tucker in land,

retaining, however, sufficient of said part or share to put said land and the buildings thereon in good repair and improvement; and it shall also be the duty of said trustee to rent said land, (in case the said Anna Tucker does not desire to live on same,) to collect the rent thereof, and after paying the taxes on said land and any necessary repairs and improvements thereon, to pay the balance of said rent over to the said Anna Tucker yearly; and I hereby give to the said Anna Tucker power to dispose of said land only by her last will and testament, made in due form of law."

By the third codicil, executed July 3, 1902, the testator simply revokes and annuls the appointment of Oscar W. Bell as one of his executors and makes Lloyd F. Hamilton sole executor of his will.

Lloyd F. Hamilton purchased a tract of 160 acres of land with the proceeds of the devise and bequest to Anna Tucker in the eighth item of the will and managed the same, collected the rents and paid the net income to her up to his death, April 29, 1917, and thereafter B. L. Catron, appointed as the successor in trust, managed the land and paid over the net income thereof to her until her death, May 4, 1920. She died intestate, unmarried, and left no children or descendants of children. After her death certain of her heirs, Frank W. Tucker and others, filed their bill for partition in the circuit court of Sangamon county, alleging that she died intestate and seized in fee of said land, and that she obtained her title to the same through the will of the testator, and that they as complainants, and the other heirs of Anna Tucker made defendants to the bill, are owners of said land by descent from her and entitled to all of the income from the same in the hands of Catron, trustee, and prayed for partition. They also made Catron, trustee, a party defendant. Catron, as trustee, filed an answer and a cross-bill, in which he alleged that he was uncertain whether upon the death of Anna Tucker the beneficial interest in said tract of land became vested in her

heirs-at-law or passed to the residuary legatees named in the will or to the heirs-at-law of the testator, and asked the court to determine all such matters. He made as parties defendant to his cross-bill all the heirs of the testator and also the heirs of Anna Tucker. In his cross-bill he prayed for partition among all persons interested in the premises as should be determined by the court. The heirs of Anna Tucker filed an answer to the cross-bill, and certain of the heirs of the testator filed their answer, in which they made the claim that said tract of land was owned by the heirs of the testator and asked that the answer stand as a cross-bill. Issues were joined on all the pleadings. The cause was referred to the master in chancery, who heard the evidence touching the matters and reported the same to the court without his conclusion. The circuit court on the hearing entered a decree finding that the heirs of Anna Tucker were the equitable owners of said tract of land and directed partition of the same among them. Wathen Hamilton, Macie Hamilton, Louella Warwick and Mary Durfey, certain of the cross-defendants and residuary legatees and heirs of James H. Wathen, prosecuted their appeal to this court.

The facts in the case are not in dispute, and the sole question for determination by this court is, What estate did Anna Tucker take under the will of the testator, James H. Wathen? Appellees contend that she took the equitable fee simple title to the property. Appellants contend that under the will she took an equitable interest for life with a limited power of disposition by her will, and that as she never disposed of the property by will, the remainder in fee descended to the heirs of Wathen as intestate property.

In construing wills the cardinal rule is, and the constant endeavor of the courts must be, to give effect to the true intention and meaning of the testator as found from the language of the will. (*Black* v. *Jones,* 264 Ill. 548; *Wardner* v. *Baptist Memorial Board,* 232 id. 606.) This intention of the testator, if not inconsistent with the established

rules of law or public policy, is to be gathered from the will and all of its parts. (*Fairview Lodge* v. *Gaddis,* 296 Ill. 570.) The will and codicils thereto must, if possible, stand together. The codicils do not supersede the will but should be construed in harmony with it unless there is a clear revocation by the codicils of the provisions of the will, and the plain provisions of the will cannot be taken away or modified by doubtful expressions contained in the codicils. (*Alford* v. *Bennett,* 279 Ill. 375; *Pratt* v. *Skiff,* 289 id. 268; *Kern* v. *Kern,* 293 id. 238.) Wills are to be more liberally construed than deeds. In construing a will the court will read it from its four corners to arrive at the intention. (*Webbe* v. *Webbe,* 234 Ill. 442.) The natural and ordinary meaning of words must be accepted and *prima facie* will prevail. (*Peacock* v. *McCluskey,* 296 Ill. 87.) Under the ordinary presumptions indulged in the construction of wills, courts will, if possible and reasonable, adopt that construction of the law which gives an estate of inheritance to the first devisee, and will adopt any reasonable construction of the will rather than to hold that the testator intended to die intestate as to any of his property. *Whittington* v. *Hunt,* 296 Ill. 133; *Wiltfang* v. *Dirksen,* 295 id. 362.

The first point to determine in this case is, What is the interest devised to Anna Tucker? Applying the foregoing rules of construction it will clearly appear that she took the equitable fee simple title to the tract of land in question. Under the doctrine of equitable conversion the entire devise and bequest to her under the eighth item of the will is to be regarded as land owned and devised by the testator, and the land purchased with the funds devised is also to be regarded as land owned and devised by the testator, and this is conceded. Only the eighth item of the will and the latter part of the second codicil are material in determining the character of title devised to Anna Tucker. It is clear that by the eighth item of the will, when considered alone,

she took the absolute title to the property therein bequeathed and devised, and this is unquestioned. The real question in the case is, Has the testator by the second codicil changed or cut down her title to a mere life estate, or was she vested in fee with the equitable title to the land?

The first direction in the second codicil is that the executors shall pay over to Lloyd F. Hamilton the part or share which "shall belong" to the testator's niece, Anna Tucker, under the terms and conditions of his will, as her trustee, and the duty of the trustee is to invest her part or share in land, retaining a sufficient part thereof to put the land and buildings thereon in good repair and improvement. Had the codicil stopped with these provisions there could be no question that the tract of land is to be considered as bought for her, and that the trustee's active duty in the premises was to convert the devise and bequest provided for in the eighth item of the will into money and to buy for her the tract of land with the money, reserving enough to put the land and buildings in good repair and improvement, and to repair and improve the buildings on the land, and when all those things were done the trustee's active duties would cease and the trust become a passive trust. The legal title to the trustee under the Statute of Uses would then have passed to Anna Tucker and she would have been the full fee simple owner thereof. When the testator in this part of the codicil used the word "belong" he used the word in its ordinary and generally accepted meaning, as there is nothing in the will to show that he meant otherwise. The primary meaning of that word, as given by lexicographers is, "to be the property of." Such, also, is the common and ordinary meaning of the word, and from the context such was the plain meaning the testator attached to it. (*Gammon* v. *Gammon,* 153 Ill. 41; 1 Pope's Legal Definitions, 150.) In other words, the testator refers in the codicil to the share that he has given Anna Tucker in the eighth item of his will as her absolute property, and the land that

was bought with that fund was her land. There is no other language in the codicil that indicates a changed intention of the testator or that changes or cuts down the quantity of the estate devised to a life estate. It was the intention of the testator, as is apparent from the language of the codicil, and also his expectation, that Anna Tucker would occupy and live on this tract of land and collect the income therefrom herself and enjoy the same. All duties of the trustee were then to cease, and would have ceased had she occupied and enjoyed the land. It was only upon condition that she did not occupy and enjoy the land that Hamilton was to continue as trustee and collect the rents thereof and after paying taxes and necessary repairs and improvements pay the net rent over to her yearly. In construing the codicil the language referring to these continued duties of the trustee should first be omitted in order to get the clear meaning of the codicil. Omitting these words, the codicil provides that upon the settlement of the estate the testator's executors are to pay over to Hamilton "the part or share which shall belong to my niece, Anna Tucker, under the terms and conditions of said last will and testament, as trustee of said Anna Tucker, and it shall be the duty of the said Lloyd F. Hamilton, as said trustee, to invest said part or share of the said Anna Tucker in land, retaining, however, sufficient of said part or share to put said land and the buildings thereon in good repair and improvement; and I hereby give to the said Anna Tucker power to dispose of said land only by her last will and testament made in due form of law." We think it is clear from this reading of the codicil that it was the intention of the testator that the property should absolutely be hers, and that it was not his intention to give her a life estate with a mere power to dispose of the land by her will. In other words, by the latter part of the codicil he really intended to put a restraint upon alienation of the land and was not intending to give a mere

power to dispose of the land. By this construction the codicil entirely harmonizes with the eighth item of the will, and by the other construction we would be interpreting the codicil as revoking, in part, the provisions of the will.

The interpretation of this will is not materially changed by the fact that Anna Tucker elected not to live on the land and to allow the trustee to continue as such trustee with the active duties mentioned. The effect of such election was simply to continue the active duties and the legal title of the trustee in the land during her life, with the equitable title in fee in her. At her death the active duties of the trustee ceased and under the Statute of Uses the legal title to the land passed to her heirs. She could have terminated the active duties and the legal title of the trustee in the land at any time during her life by electing to live on the land herself, and would thereby have been invested with the full legal title and right to convey the same in any manner she might see fit, as the restraint upon alienation would have been void. All the provisions of the will and the codicil harmonize with this construction. By the general plan and scheme of the will it was shown to be the intention of the testator that in case his residuary devisees or legatees should survive him they were to take absolute title to the property devised or bequeathed to them, and had he intended to make an exception in this plan and scheme as to Anna Tucker and that she should only take a life estate he would have undoubtedly expressed it in positive and unmistakable language.

The decree of the circuit court is affirmed.

*Decree affirmed.*