(No. 33328.—)
THOMAS J. STITES *et al.*, Appellees, *vs.* NED A. GRAY *et al.* —(WILLIAM A. GRAHAM *et al.*, Appellants.)

*Opinion filed November 18, 1954—Rehearing denied Jan. 18, 1955.*

WAYNE O. SHUEY, of Charleston, (THOMAS M. BURKE, of counsel) for appellants.

ELDER & ELDER, of Springfield, Ohio, and CRAIG & CRAIG, of Mattoon, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Defendants-appellants appeal from a decree of the circuit court of Coles County construing the last will of George W. Stites and ordering partition of certain real estate. A freehold being directly involved, this appeal properly comes to this court.

George W. Stites died in Coles County on September 21, 1899, leaving no children or descendants of deceased children nor adopted children and no parents, but leaving surviving him Lucinda Stites, his widow, and six brothers and sisters, there being no descendants of deceased brothers or sisters.

On September 12, 1899, George W. Stites had made a last will, which was subsequently admitted to probate in Coles County, the dispositive clause of which read as follows:

"I give, devise and bequeath to my beloved wife, Lucinda Stites, all my property, both real and personal, including the 160 acres of land where I now live for the term of her natural life, and after her death I desire the real estate to pass by the law of descent the same as though I had made no will. It is my desire that the remainder after such life estate in my said wife shall vest at my death in such persons as would be my heirs by the law of descent. This applies to the real estate only. The personal property I give to my wife absolutely to own, use and dispose of as her own."

Appellants are the heirs-at-law and devisees of Lucinda Stites, the surviving widow of the testator, who died on April 30, 1953. Appellees are the descendants and heirs of the six brothers and sisters of the testator, all of whom have died since the testator's death.

It is contended by the appellants that Lucinda Stites, the surviving widow, was an heir of the testator and was therefore under the terms of his will entitled to a life estate in the land in question and a one-half interest in the remainder. Appellees contend that the surviving widow was not an heir of the testator within the meaning of that term as used in the will and that she was during her lifetime entitled to no interest in the remainder in said land, and the trial court so held.

The assignment of errors presents but one basic issue for our decision and that is: whether or not the trial court erred in finding that Lucinda Stites, the surviving widow, was not an "heir" of George W. Stites within the meaning of that term as used in the will of George W. Stites.

As established by a long line of decisions of this court and as restated in the recent case of *Sloan* v. *Beatty*, 1 Ill. 2d 581, the paramount rule of testamentary construction is that the intention of the testator as expressed in his will governs the distribution of his estate, and the intention of the testator, once it has been ascertained, will be given effect unless to do so would violate some settled rule of law or would be contrary to public policy. All rules of construction yield to the intention of the testator as ex-

pressed in the will and no rule of construction will be applied to defeat that intention. Effect must be given to the whole will, and the testator's intention cannot be determined from the language of any particular clause, phrase or sentence. Since wills are seldom exactly alike, the precedents in other will cases are seldom of controlling importance in determining the intention of the testator as expressed in the particular will under construction.

The word "heirs" in its technical sense applies to those persons appointed by law to inherit an estate in case of intestacy. (*Le Sourd* v. *Leinweber,* 412 Ill. 100.) Being a technical word of fixed legal meaning the word "heirs" will be given its legal effect when used in a will even though the testator uses inconsistent words, unless such inconsistent words are of such nature as to make it clear that the word "heirs" was not used in its proper legal sense. *Le Sourd* v. *Leinweber,* 412 Ill. 100; *Richardson* v. *Roney,* 382 Ill. 528.

However, as stated in *In re Estate of Fahnestock,* 384 Ill. 26, this court has frequently held that the word "heirs" when used in a will does not necessarily have a fixed meaning. It may mean children or, where there are no children, it may mean some other one class of heirs (not including all the heirs) if the context of the entire will plainly shows such to have been the intention of the testator.

Greater latitude is allowed in the construction of a will than is allowed in the construction of a deed, (*Duffield* v. *Duffield,* 268 Ill. 29; *Webbe* v. *Webbe,* 234 Ill. 442,) and though the technical meaning of the word "heir" will ordinarily *prima facie* prevail, such meaning will not be given effect to the extent of defeating the obvious general intention of the testator. (*Johnson* v. *Askey,* 190 Ill. 58; *Blackmore* v. *Blackmore,* 187 Ill. 102.) In *Black* v. *Jones,* 264 Ill. 548, at page 557, the court said in this respect as follows: "The widow's status, as such, is created by statute, and in the general sense in which the word is usually used and understood a widow is not spoken of as an heir.

(*Unfried* v. *Herber,* 63 Ind. 67; *McNutt* v. *McNutt,* 116 Ind. 545.) In this State the widow does not take real estate as heir where there is a child or children or descendants of a deceased child or children. (Hurd's Stat. 1913, chap. 39, sec. 1, par. 4.) The phrase 'heir-at-law' is commonly and rightfully used to indicate the heirs at common law,— the next of kin by blood. (21 Cyc. 427; *Meadowcroft* v. *Winnebago County,* 181 Ill. 504; and *Smith* v. *Winsor,* 239 Ill. 567.)"

The testator in this case having died in the year 1899, leaving no child or children or descendants of a child or children, but leaving a widow and brothers and sisters surviving, one half of the real estate and the whole of the personal estate would have descended to the widow as an absolute estate forever and the other half of the real estate would have descended in equal parts among the brothers and sisters of the deceased according to the Illinois law of descent then in force. (Hurd's Stat. 1915-1916, chap. 39, sec. 1, par. 3.) Accordingly the surviving widow and the testator's brothers and sisters were the "heirs" of George W. Stites within the scope of the legal technical meaning of that term.

The fact that a gift of a life estate is made to a named person and a gift of a remainder in the same property is made to a class which will include the life tenant does not in and of itself manifest an intention to exclude the life tenant from the class which will take the remainder. *Dillman* v. *Dillman,* 409 Ill. 494; *McGinnis* v. *Campbell,* 274 Ill. 82; *Lynn* v. *Worthington,* 266 Ill. 414; *Black* v. *Jones,* 264 Ill. 548; *Smith* v. *Winsor,* 239 Ill. 567.

Thus the specific question in the instant case is whether or not there is language within the four corners of George W. Stites's will which expresses an intention on his part to use the term "heirs" in a popular or colloquial sense so as to exclude the widow from its meaning, rather than its

legal technical sense so as to include the widow within its meaning.

The will in question first gives a life estate clearly and unequivocally to the surviving widow in both the real and personal estate of the decedent. The will then specifically states that the remainder after such life estate in the surviving widow shall vest at the testator's death in such persons as would be his heirs by the law of descent, the same as though he had made no will. Such direction is then specifically limited to apply to real estate, only. The will then provides that the personal property shall belong to the widow absolutely. The testator's intention must be gathered from the will as a whole, giving effect and meaning to each and every clause if the same can be done. It is apparent that the immediate prevailing intention of the testator was that his surviving wife should have the use of all of his property, both real and personal, for her own personal benefit during the term of her natural life. The next dispositive clause directs that after her death the property, without any distinction between real and personal property, shall pass to his heirs by the law of descent, the same as though he had made no will, such remainder vesting as of the date of his death. If nothing further had been stated in said will it is clear that according to the statute of descent in effect at the date of the testator's death the surviving widow would have taken all the personal property absolutely in her own right and one half of the real estate, as one of the decedent's heirs within the legal technical meaning of that word. However, the testator proceeds to specifically state that such devise of the remainder to his heirs applies to real estate only and that the personal property shall go absolutely to the surviving widow. Such provision was unnecessary if he meant "heirs" in its strict, technical sense. Clearly, the testator contemplated that the term "heirs" as used in his will did not include his surviving widow and

did not give her an interest in the real property other than the original life estate given her, or he need not have specifically stated she should get the personal property absolutely. In other words, the dispositive clause used in the will clearly indicates that the testator used the term "heirs" in its popular or colloquial sense as referring to his blood kindred. To construe the meaning of the will of George W. Stites otherwise would be to hold meaningless and of no significance the sentences: "This applies to the real estate only. The personal property I give to my wife absolutely to own, use and dispose of as her own." And it has been well established by repeated decisions of this court that a will, if possible, will be construed so that no language used by the testator is treated as surplusage or rendered void or insignificant. *Dillman* v. *Dillman,* 409 Ill. 494; *Weilmuenster* v. *Swanner,* 404 Ill. 21.

This conclusion as to the proper construction of the testator's meaning and intention in this particular will is further supported by the decisions of this court as reported in *In re Estate of Fahnestock,* 384 Ill. 26, *McGinnis* v. *Campbell,* 274 Ill. 82, *Black* v. *Jones,* 264 Ill. 548, and *Smith* v. *Winsor,* 239 Ill. 567.

In *In re Estate of Fahnestock,* 384 Ill. 26, which was an inheritance tax case, it was held that where a testator died leaving only his widow and his sister as heirs-at-law, and leaving only personal estate, all of which was given to the widow "to do with as she sees fit," with a provision that the unexpended remainder shall go to my "legal heirs," the entire remainder must be assessed as vesting in the sister as the only legal heir at the death of the testator and not as vesting in the widow, who if an heir would take all the personalty, where the entire will showed an intention of the testator that heirs of his blood should take the unexpended remainder.

In the case of *McGinnis* v. *Campbell,* 274 Ill. 82, which was a will construction and partition case, it was held that

where a testator gives a life estate to his wife in all of his property if she survives him, with a life estate after her death to a grand-nephew, and then provides that after the death of the wife and grand-nephew the remainder shall go to "my legal heirs at the time of my decease," the term "legal heirs" will be held to mean heirs by the blood and will not include the widow, although the testator left no children or descendants of children.

In *Black* v. *Jones,* 264 Ill. 548, after giving the wife certain property in fee and placing the remainder of the estate in the hands of trustees, with directions to pay the income to the widow, the testator directed that at the widow's death the trust estate be conveyed by the trustees "to my heirs at law living at the time of my death." There were no children or descendants of children of the testator, and the same question arose in that case as here and it was held that the surviving widow was not intended by the testator as one of the heirs-at-law, but as that term was used in the will it included only heirs of the blood.

In *Smith* v. *Winsor,* 239 Ill. 567, a life estate with broad powers of consumption and *intervivos* disposition was given a wife if she survived the testator and at her death the remainder was to descend to the testator's heirs-at-law in the proportions provided by the statutes of the State of Illinois. If the wife did not survive the husband the property was to go at his death to the same persons and in the same manner. The wife survived the testator but no child nor descendant of a deceased child survived, and upon the widow's death the same question arose as is in the present case. The court held that she was not included in the devise of the fee to the testator's heirs-at-law and that the term "heirs at law" as there used meant heirs by the blood.

The language of the wills in these cases differs from the exact language here used but there is not such difference of language as to distinguish them from the present case,

and the general principles held to govern in those cases apply also in this case.

We here conclude that the trial court was correct in finding that the intent and meaning of the last will of George W. Stites is that Lucinda Stites, his widow, was not included within the term "heirs by the law of descent" as used in his will, and that the said Lucinda Stites took only a life estate in the real estate in question and did not take any part of the remainder therein. The decree of the trial court is therefore affirmed.

*Decree affirmed.*