(No. 13453.—Reversed in part and remanded.)

THE BELLEVILLE SAVINGS BANK *vs.* JULIUS ANESHAEN-
SEL *et al.* Appellees.—(BERTHA BANG, Appellant.)

*Opinion filed June 22, 1921.*

1. WILLS—*when the testator's insurance policy is payable to his
representative and is to be distributed by provisions of will.* A pol-
icy of insurance on the life of the testator, payable to his wife or
her children, is properly paid to the testator's representative where
the wife dies before the testator without children or descendants
of a child or children, as the Statute of Descent makes the sur-
viving husband heir of all the wife's personal property; and the
proceeds of the policy will be distributed according to the provision
made in the will for the distribution of the personal property.

2. SAME—*when rule in Shelley's case applies to·devise in resid-
uary clause.* A residuary clause by which the testator devises to
his wife "all the rest and remainder of my estate, both real and
personal, * * * and after her death one-half of my said estate
to the heirs of my said wife, or to her devisees in case she leaves
a will, in fee simple," is subject to the rule in *Shelley's case* as to
the real estate devised, and the wife, in case she survives the tes-
tator, will take the fee simple title to one-half of all the residue of
the real estate not otherwise devised.

3. SAME—*real estate descends as intestate property·when de-
vise lapses.* Where a devise of a fee lapses because of the death
of the devisee before the death of the testator, the real property
so devised will.descend to the testator's heirs as intestate property
even though there is a residuary clause disposing of all "the rest
and remainder" of the testator's property, "both real and personal,"
as the residuary clause refers only to real estate not otherwise
disposed of by the will, and the rule relating to the devolution of
lapsed legacies does not apply to a devise in the absence of spe-
cial provisions in the will.

4. SAME—*when power to bequeath does not pass absolute title
to personal property.* A residuary clause giving to the testator's
wife for her life all the rest of the testator's real and personal
property and after her death to her heirs, "or to her devisees in
case she leaves a will, in fee simple," is not sufficient to pass an
absolute title to the personal property, where the power is not exe-
cuted because the wife dies before the death of the testator.

5. SAME—*rule in Shelley's case does not apply to disposition of
personal property.* The rule in *Shelley's case* does not apply to a

disposition of personal property in a will even though both real estate and personal property are disposed of in the same clause and in the same language, but the intent of the testator in the disposition of his personal property will be ascertained and followed.

6. SAME—*when legacy is gift of a life estate with remainder—distribution.* A testator may bequeath a life estate in personal property and limit a remainder after it, and where a residuary clause gives the testator's wife a life estate in the residue of his personal property, with one-half of the remainder to her heirs and the other one-half to certain other legatees in equal shares, the property will be distributed according to the intention of the testator although the wife died before the testator.

7. SAME—*when a legacy will lapse.* A legacy is said to lapse either by the death of the legatee before the death of the testator or by the death of the legatee before the estate vests.

8. SAME—*rule where lapsed legacy is a portion of the residuary estate.* Where a lapsed legacy is a portion of the residuary estate itself and the residuary bequest is to several legatees in common or in distinct parcels, the lapsed legacy does not inure to the benefit of the remaining legatees but becomes intestate estate and as such passes to the next of kin or heirs-at-law of the testator.

9. SAME—*when husband will not be regarded as "heir" of his wife.* Where it is apparent that the testator, in disposing of the residue of his estate by devising a life estate to his wife with remainder one-half to her heirs and one-half to his heirs, intended to divide the estate equally as between his wife's blood relatives and his own, the testator will not be regarded as the sole heir of the wife to the exclusion of her blood relatives where she dies in the testator's lifetime, leaving no children or descendants of children.

10. SAME—*rule where beneficiary of lapsed legacy is also legatee in residuary clause.* The general rule th ,t'specific lapsed legacies fall into the general residuary clause and are to be distributed among the residuary legatees meets with an exception where legacies are given to several beneficiaries and the residue is bequeathed to the same legatees, and in such case the residue will not include a lapsed legacy to one of them but the lapsed legacy will descend as intestate estate, as the testator cannot be held to have intended to bequeath a portion of the residue to one who died.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

P. K. JOHNSON, and W. E. KREBS, for appellant.

L. D. TURNER, R. D. W. HOLDER, and L. R. OSTER-
HAUS, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Fridolin Aneshaensel died testate June 27, 1918, leav-
ing him surviving no widow, his wife, Anna Aneshaensel,
having died intestate March 21, 1917. Neither of them left
surviving any child or descendants of a child. The testa-
tor left surviving as his only heirs-at-law, William Anes-
haensel, his brother; Charles, Walter and Julius Aneshaen-
sel and Emma Scherrer, children of his deceased brother,
Charles Aneshaensel; and Ludwig Schmidt, son of his de-
ceased sister, Barbara Schmidt. Anna Aneshaensel left sur-
viving as her only heirs-at-law, Fridolin Aneshaensel, the
testator; August Merk, her brother; eight nieces and neph-
ews, including Bertha Bang, the appellant; and two grand-
nieces and a grand-nephew, all of whom are the children
and grandchildren of her deceased brother, Charles Merk;
two nephews and a niece and two grand-nephews, children
and grandchildren of her deceased sister, Louisa Pithan;
and three nephews and two nieces, children of her deceased
sister, Bertha Kring. The Belleville Savings Bank was ap-
pointed conservator of Fridolin Aneshaensel a year or more
before his death, but his sanity at the time he made his
will is unquestioned. The bank was also appointed admin-
istrator with the will annexed after the will of the testa-
tor had been probated. The will was executed March 22,
1909, and names his wife, Anna Aneshaensel, and Henry E.
Schrader, as executors, the latter of whom qualified as ex-
ecutor and thereafter proceeded with the administration of
the estate in lieu of the bank as administrator. After pro-
viding for the payment of his debts the testator bequeathed
and devised his property, both real and personal, in the fol-
lowing language:

"*Second*—I give, devise and bequeath to my beloved
wife, Anna Aneshaensel, my residence, being eighty feet

off of the west side of lot 135, in the original town of
Belleville; also bonds to the amount of $10,000; also my
household furniture of every description contained in my
said residence; and also my life insurance, $2000, as her
absolute property.

"*Third*—I give and devise to my brother, William
Aneshaensel, the sum of $200, and to each of his children,
named Robert, Emma, Ida and Sophie, $700, which will be
paid out of the debt of $3000 due and owing to me by my
said brother, William.

"*Fourth*—I give and devise to my nephew Julius, son
of my deceased brother, Charles, the sum of $1000, and I
give to each of the other children of my brother, Charles,
named Emma, Charles and Walter, the sum of $700.

"*Fifth*—I give and devise to my sister, Barbara Schmidt,
in Karlsruhe, Baden, Germany, the sum of $1000, and if
I should survive my sister then the legacy to her shall go
to her son, Ludwig. All of the said legacies shall be paid
by my executors in the due course of administration of
my estate.

"*Sixth*—All the rest and remainder of my estate, both
real and personal, I give, devise and bequeath to my wife,
Anna, for and during the term of her natural life, and after
her death one-half of my said estate to the heirs of my
said wife, or to her devisees in case she leaves a will, in
fee simple. The other one-half of my estate shall be di-
vided into nine equal shares, of which one share shall go
to each of the above named children of my brother, Wil-
liam Aneshaensel; one share shall go to each of the four
children above named in section 4 of this will, of my
brother, Charles Aneshaensel; one share shall go to my
sister, Barbara Schmidt, above mentioned, (and in case I
should survive my said sister her share shall go to her son,
Ludwig, in fee simple.)"

The testator died seized and possessed of all the prop-
erty, both real and personal, mentioned in the will and of

other property not therein specifically mentioned. The personal property of which the testator died possessed consisted of cash, bonds and one promissory note, all of which was valued at more than $57,000. The insurance policy mentioned in the will was issued by the Mutual Life Insurance Company of New York and was made payable to Anna Aneshaensel or her children. It was collected from the insurance company by the bank as conservator of the testator, and the proceeds thereof are included as part of the cash assets of the testator's estate. The homestead of the testator described in the will is valued at $5000. The testator also died seized of three other pieces of real estate valued at $8500, making a total valuation of the real estate of $13,500.

The Belleville Savings Bank, as former conservator and acting administrator, filed a bill in the circuit court of St. Clair county praying for the construction of the sixth and second clauses of the will. Later, and after he had qualified as executor, Henry E. Schrader, as executor, filed a supplemental bill, in which he alleged, in substance, the material facts above set forth and prayed the same relief and that he might be substituted as complainant in lieu of said administrator. All of the heirs of the testator aforesaid and the four children of William Aneshaensel, legatees named in the will, and the heirs of Anna Aneshaensel, except the testator, were made parties defendant to the bill. All of the heirs and legatees of the testator other than the heirs of Anna Aneshaensel filed answers admitting substantially all of the averments of the amended and supplemental bill, and they also alleged that the heirs of Anna Aneshaensel were not entitled to any portion of the testator's estate either by virtue of clause 2 or clause 6 of the will. Bertha Bang filed her answer, admitting practically all the averments of the bill, but alleging that in the construction of the will it should be held that the specific legacy to Anna Aneshaensel in clause 2 of the will lapsed and became part

of the residuary estate, and that under clause 6 (the residuary clause) one-half of the real estate and personal property bequeathed by clause 6 vested in the legatees therein mentioned, viz., Julius, Charles, Emma, Walter, Robert and Ida Aneshaensel and Emma Scherrer, Sophie Buchert and Ludwig Schmidt, and that the other one-half vested in the heirs of Anna Aneshaensel, except the testator. All of the other defendants were adults and made default and the bill was taken as confessed as against them. Issues were formed by filing replications to the answers.

The court found and decreed in accordance with the contentions of the heirs of the testator, and ordered that all debts and claims, costs of administration, costs and charges in this suit, including solicitors' fees taxed and the legacies mentioned in clauses 3 and 4 of the will, be first paid. Ludwig Schmidt being found to be an alien enemy, his specific legacy in clause 5 of the will and all other moneys found payable to him under the will are to be held subject to the rules of the proper officials of the United States government and paid as directed thereby. It was also decreed that the one-half of the proceeds of the property mentioned in clause 6 of the will be paid one-ninth each to the legatees mentioned in said clause, other than Anna Aneshaensel and her heirs, Ludwig Schmidt's share to be retained as aforesaid, and that all the other property of the testator, including the proceeds of the insurance policy aforesaid, should be distributed as intestate property to the heirs of the testator: to William Aneshaensel one-third; to Julius, Charles and Walter Aneshaensel and Emma Scherrer each one-twelfth; and to Ludwig Schmidt, for the use of and as directed by the custodian of alien enemy property, the remaining one-third. The court specifically held that all of the property devised to the wife in clause 2 and one-half of the property described in clause 6 of the will, and willed to the wife during her life and the remainder to her heirs, descended to the heirs of the testator, including the pro-

ceeds of the insurance policy.    Bertha Bang has brought
this appeal.

There is no contest on any question of fact in this case.
The first legal question that will be considered arises with
reference to the proceeds of the insurance policy which was
issued on the life of the testator and made payable to Anna
Aneshaensel or her children.    The beneficiary in this policy
had no children at the time she died.    The beneficiary was
never changed by the testator, and by the express terms
of his will the policy was to be paid to her at his death,
therefore the policy at the testator's death was payable to
her administrator or legal representatives, as the alternative
beneficiaries named in the policy had no existence.    Had her
administrator collected the policy the proceeds would have
been distributed as other intestate property after the pay-
ment of debts and expenses of administration.    There was
no such administration and no necessity for such, so far
as this record shows.    The third paragraph of section 1 of
our statute on descent provides: "When there is a widow
or surviving husband, and no child or children, or descend-
ants of a child or children of the intestate, then (after the
payment of all just debts) one-half of the real estate and
the whole of the personal estate shall descend to such widow
or surviving husband as an absolute estate forever, and the
other half of the real estate shall descend as in other cases,
where there is no child or children or descendants of a child
or children."    The policy of insurance was therefore prop-
erly paid to the bank as the conservator of the testator and
was chargeable to the administrator after it was appointed
as administrator, to be distributed under the provisions of
the testator's will.

By the second clause of the will the testator devised to
Anna Aneshaensel, in fee, the real estate described as his
residence.    By the sixth clause he devised the remainder of
his real estate to her for and during the term of her natural
life, and the remainder in one-half thereof after her death

to her heirs, or to her devisees in case she leaves a will, "in fee simple." By this devise Anna Aneshaensel, under the rule in *Shelley's case,* would have taken, had she survived the testator, the fee simple title to one-half of all the residue of the real estate. (*Ward* v. *Butler,* 239 Ill. 462; *Bails* v. *Davis,* 241 id. 536.) The devises of the real property in fee to Anna Aneshaensel lapsed because of her death before the death of the testator and descended to the heirs of the testator as intestate property. The rule of law relating to the devolution of lapsed legacies does not apply to devises of real estate in the absence of special provisions of the will showing a contrary intention. As to such property, a general residuary devise disposing in general terms of the rest and residue of the testator's property refers only to the real estate possessed by the testator at the time he executed the will, not otherwise disposed of by it. This rule comes from the common law, which favors the heir-at-law, rather than the residuary legatee, in the disposition of realty. The opposite rule prevails in the disposition of personal property by will, the common law in such case favoring the residuary legatee. These same rules also prevail in this State. *Crawford* v. *Cemetery Ass'n,* 218 Ill. 399; *Galloway* v. *Darby,* 44 L. R. A. (N. S.) 782, and notes on pp. 793, 800.

An absolute title to the personal property was bequeathed to the testator's wife in the second clause of the will, but this is not true as to the personal property bequeathed to her in the sixth clause, under our view of this will. The bequest of the personal property in the sixth clause is in the same language as the devise of the real estate therein, the same being, "to my wife, Anna, for and during the term of her natural life, and after her death one-half of my said estate to the heirs of my said wife, or to her devisees in case she leaves a will, in fee simple." The power given by the testator to bequeath the personal property by an absolute title not having been executed, does not suffice, of it-

self, to pass an absolute title to the personal property or to the real estate. The fee simple title in the real estate mentioned in this clause was devised under the rule in *Shelley's case*, which is a rule of property and not of construction. That rule has no application to personal property, and this is so in cases where real estate and personal property are disposed of in the same clause and in the same language. (*Lord v. Comstock*, 240 Ill. 492; Kales on Estates and Future Interests, secs. 438, 439.) The true rule is, as stated in the authorities just cited, that the rule in *Shelley's case* must be applied as to real estate when it is applicable, even against the expressed intent of the testator, but in the disposition of personal property by will the intent of the testator must be ascertained and followed. Applying this rule, we think it is clear from the context of the will that the testator by the sixth clause of the will bequeathed to his wife a life estate in the residue of his personal property, and that after her death one-half of the remainder is bequeathed to her heirs and the other one-half to the other nine legatees mentioned in that clause, in equal shares. It is a well recognized rule of law that a testator may bequeath a life estate in personal property to another and limit a remainder after it. *Pratt v. Skiff*, 289 Ill. 268; *Hatfield v. Fowler*, 60 id. 45.

The only theory upon which the decree of the learned chancellor can be sustained that the now living heirs of Anna Aneshaensel can take no part of the testator's personal property as legatees under the sixth clause of the will, is that the testator must be regarded as her heir to such property within the meaning of the words "the heirs of my said wife," found in said clause. If we so interpret the will as to the personal property, the testator, under our statute on descent, is the sole heir of his wife, and the legacy under said clause to "the heirs of my said wife" lapsed and descended as intestate property to the heirs of the testator. This is so because a legacy is said to lapse

either by the death of the legatee before the death of the testator or by the death of the legatee before the estate vests. (Thompson on Wills, sec. 305.) There is no theory upon which it can be said that any of the personal property under said clause actually vested in the testator as legatee before his death, as no property, under the terms of the will, vested in any legatee until after the death of the testator. So if he is to be regarded as the sole heir of his wife, and therefore the sole legatee within the meaning of the words "to the heirs of my said wife," his legacy lapsed, and the legacy being bequeathed by the residuary clause of the will would descend as intestate property, under the rule that a lapsed legacy of a portion of the residuary estate itself, where the residuary clause is to several legatees in common or in distinct parcels, does not inure to the benefit of the remaining legatees but becomes intestate estate and as such passes to the next of kin or heirs-at-law of the testator. *Magnuson* v. *Magnuson,* 197 Ill. 496; *Galloway* v. *Darby, supra,* and notes on pp. 811, 813.

The rule is well settled by this court that the word "heirs," unexplained by the context, will be held to mean the persons appointed by law to succeed to the estate in case of intestacy as to both real and personal property. (*Richards* v. *Miller,* 62 Ill. 417; *Alexander* v. *Masonic Aid Ass'n,* 126 id. 558.) In the disposition of the real estate in the sixth clause of this will the rule in *Shelley's case* applies though it violates the clear intent of the testator, as that rule is a rule of law or of property and not of construction. Appellant's counsel concede that this is the correct construction as to the real estate devised in that clause.

In the disposition of personal property the intent of the testator as expressed by his will must be followed. Observing this rule, we think it is clear from the context of the will that the testator by the use of the word "heirs" in the sixth clause had reference to blood relatives of his wife, only. This is shown clearly by the fact that he only dis-

posed of about one-third of his personal property and of
less than one-half of his real estate to the specific legatees.
His intent was to make a special devise of $12,000 of per-
sonal property absolutely to his wife and of $7100 to his
own blood relatives. He had left more than $38,000 of his
personal property and $8500 worth of real estate as the
residuum of his estate, which he disposed of by the sixth
or residuary clause. In the disposition of this residuary
estate he gave equal consideration to his wife and her heirs
and his own blood relatives, giving to her and her heirs and
his blood relatives one-half each. What the causes are that
moved the testator to accord to his wife and her heirs this
consideration in dividing his residuary estate is not shown
by the record, but it is clear from his will that he consid-
ered such a disposition as the right thing for him to make.
At any rate, we think it is clear that he intended that his
wife and her blood relatives or next of kin should have
one-half of the residuary estate and that his blood relatives
should have the other half, and that he did not have any
thought of making himself a legatee under his own will or
of himself being included within the designation of "heirs
of my said wife." He contemplated in the making of his
will that his wife would survive him. It is true that he
was presumed to know the law, and it is also true that he
never changed his will after the death of his wife. There
is sufficient explanation of this latter fact in the evidence,
which shows that his conservator was appointed just two
weeks after the death of his wife, April 4, 1917. Therefore
there is no presumption against the blood relatives of the
testator's wife because of the fact that the will was not
changed, as he is presumed to have been mentally incompe-
tent to make another will. We hold that in the use of the
words "heirs of my said wife" the testator only intended
to include her heirs who were her blood relatives, and that
such heirs or blood relatives who are made parties defendant
to the bill should take one-half of all the personal property

bequeathed to her heirs under the sixth clause of the will.
This court has not hesitated to hold that the widow or the
husband will not be included under the designation "heirs"
or "heirs-at-law," notwithstanding the provisions of our
statute, where the facts are such that we are not bound by
any rule of law or of property to make a different ruling.
*Black* v. *Jones,* 264 Ill. 548; *Smith* v. *Winsor,* 239 id. 567.

It is a general rule that specific lapsed legacies fall into
the general residuary fund and are to be distributed among
the residuary legatees.   There is an exception to this gen-
eral rule, that where the legacies are given to several lega-
tees and the residue is bequeathed to the same legatees it
follows that the residue will not include a lapsed legacy to
one of them, because to so hold would be the equivalent of
holding that the testator intended to bequeath to one who
died a portion of the residue.   (*Crawford* v. *Cemetery Ass'n,
supra.*)   All of the special legatees, including the widow,
were made legatees of the personal property in the sixth
clause of the will.   All the personal property in the second
clause of the will under this holding should be distributed
to the heirs of the testator as intestate property.   This hold-
ing excludes not only the heirs or blood relatives of Anna
Aneshaensel, but also the four children of William Anes-
haensel, the living brother of the testator.   The proceeds
of the insurance policy are likewise to be distributed to
the heirs of the testator, as they were a part of the per-
sonal estate of the testator acquired by him as the heir of
his intestate wife and of which he died possessed.   In fine,
all of the property, both real and personal, of which the
testator died seized and possessed, for the reasons afore-
said, is to be distributed among the heirs of the testator,
except the special legacies mentioned in clauses 3, 4 and 5
of the will, correct dispositions of which were made by the
trial court, and except, also, the personal property devised
in the sixth clause of the will, which is to be distributed
one-half to the next of kin or heirs of Anna Aneshaensel

*per stirpes,* as already indicated, and the other half to the other nine legatees mentioned in said clause, and except, also, the one-half of the residue of the real estate mentioned in the same clause of the will, which is given to the nine devisees named.

For the reasons aforesaid the decree of the circuit court is affirmed in part and in part reversed and the cause remanded, with directions to render a decree in harmony with the views herein expressed.

*Reversed in part and remanded.*