(No. 23329.—

HARRY L. CARTER *et al.* Appellants, *vs.* W. W. LEWIS *et al.* Appellees.

*Opinion filed October 14, 1936—Rehearing denied Dec. 2, 1936.*

F. A. WHITESIDE, WILLIAM G. VOGT, and GILLESPIE, BURKE & GILLESPIE, for appellants.

COYLE & McDONALD, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree entered by the circuit court of Greene county construed the last will and testament of D. F. Carter and dismissed a partition suit instituted by his collateral heirs. From that decree those heirs prosecute this appeal.

D. F. Carter died testate on August 7, 1931. His last will and testament was duly proved and admitted to record by the county court of Greene county. The present controversy arises over the construction of the second and third clauses of the will, as follows:

"2nd. I give, devise and bequeath to my said wife, Juranda C. Carter, for and during her natural life, and then to the legal heirs of my body, the following described real estate, to-wit: The east half (E½) of the southwest quarter (SW¼) and the southwest quarter (SW¼) of the southwest quarter (SW¼) both in section thirty-five, in township ten north, range twelve, west of the 3d P. M. in Greene county, Illinois.

"3d. I give, devise and bequeath to my said wife, Juranda C. Carter, the entire residue and remainder of my real estate wherever situated, to have and to hold the same, in fee simple, absolutely and forever."

The testator's mother, Jane Stanton Carter, and his wife's father, Jesse C. Lewis, were half-brother and sister. They had the same mother, Mary LaSeur Lewis Stanton, but different fathers. D. F. Carter and Juranda C. Carter were thus first cousins of the half-blood. They were married in 1892. At the time of making his will, on June 8, 1911, Carter was forty-five years of age and his wife forty-six. They had no children and the testator died without heirs of his body. His widow, Juranda C. Carter, took and retained exclusive possession of the farm of 120 acres described in the second clause of the will until her death, on June 16, 1934. By her will, duly proved and admitted to probate, she directed her executor to convert her entire estate, including this land, into cash and to distribute the

proceeds to the beneficiaries named in the will. Subsequently, three brothers of Carter and certain descendants of his deceased brothers and sister, (hereinafter referred to as the plaintiffs,) filed their complaint in the circuit court of Greene county seeking partition of the farm among the heirs-at-law of Carter according to their respective interests. The remaining descendants of Carter's deceased brothers and sister, the executor, heirs-at-law and legatees of Juranda C. Carter, deceased, were made parties defendant. By their complaint as amended the plaintiffs alleged that the marriage between D. F. and Juranda C. Carter was void because they were first cousins, and hence that she was not his widow or heir; that the devise of the remainder of the farm lapsed upon the testator's death without ever having had heirs of his body; that the property descended as intestate property to his heirs-at-law, and that, in consequence, Carter's brothers and the descendants of his deceased brothers and sister were the owners of and entitled to partition of the farm. The executors, heirs-at-law and legatees of Juranda C. Carter (hereinafter referred to as the defendants) by their answer claimed that upon the death of Carter without having had any issue of his body the fee to the farm vested in the widow, Juranda, by virtue of the residuary clause of his will, and that therefore the legatees named in the will of Juranda C. Carter were seized in fee simple of the farm. The chancellor entered a decree construing the second clause of the will of Carter as a devise of the farm to his wife for life and then to his children, if any, and found that by virtue of this provision a life estate was created in the farm in the widow, with remainder to the issue of the testator's body, contingent upon his having any such children or issue. The decree further found that by the residuary clause the testator devised the residue of his real estate, including the reversion in fee in the farm, to Juranda C. Carter, and that upon her husband's death without having had children she became the owner of the

farm in fee. The decree accordingly found that the plaintiffs, as heirs-at-law of the testator, had no interest in and were not entitled to partition of the farm and dismissed their complaint for the want of equity.

To obtain a reversal of the decree the plaintiffs contend that the devise of the fee in the second clause of the will lapsed and descended to the heirs-at-law of the testator as intestate property. The defendants, on the other hand, maintain that Juranda C. Carter, as the residuary devisee of her husband, became vested with the fee to the farm upon his death without ever having had children.

To sustain their contention that the devise of the fee in the farm lapsed, the plaintiffs invoke the rule that lapsed devises of real estate do not pass under a general residuary clause but become intestate property and descend to the heirs-at-law of the testator. (1 Jarman on Wills, (6th Am. ed.) chap. 20, pp. 635, 636; 2 Page on Wills, (2d ed.) sec. 1259; *Belleville Savings Bank* v. *Aneshaensel,* 298 Ill. 292; *Crawford* v. *Cemetery Ass'n,* 218 id. 399.) The initial inquiry is whether the devise of the remainder in the farm lapsed owing to the fact that upon the testator's death he had no heirs of his body to take.

A devise is generally deemed lapsed where the devisee dies in the intermediate period between the making of the will and the death of the testator. (*Dunn* v. *Kearney,* 288 Ill. 49; *Pirrung* v. *Pirrung,* 228 id. 441.) A lapsed devise is thus valid and operative when a will is made but fails afterward because of the occurrence of some event during the lifetime of the testator. Void devises, on the other hand, such as those tainted with illegality, or where the beneficiary is dead at the making of the will or is otherwise incapable of taking under it, are void from their inception and never could have taken effect. (Page on Wills, (2d ed.) sec. 1260; 28 R. C. L. p. 336.) Obviously, only devises originally valid can lapse. The devise in controversy is neither a lapsed nor a void devise. On the con-

trary, it was a valid devise, which perished upon the death of Carter without heirs of his body. The question presented for decision is thus narrowed to a determination of the legal effect of the failure of issue under the circumstances previously narrated.

*Belleville Savings Bank* v. *Aneshaensel, supra,* is, however, invoked to sustain the plaintiffs' contention. The testator in the case relied upon devised and bequeathed to his wife, Anna, by the second clause of his will, certain real estate and personal property absolutely. The sixth clause was the residuary clause, by which he gave and devised to her one-half of the residuum of his estate for life and provided that after her death this one-half should go to her heirs, or, in the alternative, to her devisees in case she left a will. The other half of the residuum was bequeathed to the testator's collateral relatives. Anna died before the testator. The devise of the real estate contained in the second clause, in consequence, lapsed. The court held further that the language of the sixth clause making a devise to Anna, under the rule in *Shelley's case,* would have vested the fee simple title in her to one-half of all the residue of real estate had she survived the testator but that because she had predeceased him this devise also lapsed and descended to his heirs-at-law. The facts are not parallel with those in the present case. Manifestly, a devise to children of the testator cannot be said to lapse if no child or children are ever born to take. A remainder which is limited to the children or heirs of the body of the grantor or testator is valid notwithstanding the grantor or testator may presumably be incapable of having children, for in contemplation of law the possibility of issue is commensurate with life.

*Crawford* v. *Cemetery Ass'n, supra,* is also relied upon by the plaintiffs. Helen L. Huling by her will made a devise of real estate to the "Helen Huling Home," an association to be organized and incorporated under the laws of this State. No such corporation existed when the will was

executed or at the time of the death of the testatrix. The devise mentioned was a void devise and the property covered by it was held to pass by descent as intestate property. It does not follow that because a devise to a fictitious person or corporation, or to a person already dead, is void, a devise to unborn children is likewise void.

The defendants, to sustain the decree, place reliance upon the rule that where a specific devise comprises only a partial or contingent interest in lands, leaving an ulterior or alternative interest undisposed of, namely, the reversion in fee, such interest will pass, upon a testator's death, to his general residuary devisees. (1 Jarman on Wills, (6th Am. ed.) chap 20, p. 637; Thompson on Wills, secs. 332-337; *Fisher* v. *Easton,* 299 Ill. 293; *Friedman* v. *Friedman,* 283 id. 383; *Egerton* v. *Massey,* 3 C. B. (n. s.) 338.) A contingent remainder has been well defined as a legal future interest after a particular estate of freehold limited upon an event (precedent in fact and in form to its taking effect in possession) which may happen before or after, or at the time of or after, the termination of the preceding estate of freehold. (Kales on Estates and Future Interests, (2d ed.) sec. 96.) Again, a remainder limited to take effect either to dubious and uncertain persons or upon a dubious and uncertain event is a contingent remainder. (2 Blackstone's Com. 169; *Stevens* v. *VanBrocklin,* 295 Ill. 434; *Friedman* v. *Friedman, supra; Jones* v. *Miller,* 283 Ill. 348.) In particular, a remainder to an unborn person being necessarily limited on an event which may happen before or after, or at or after, the termination of the particular estate is contingent. (Kales on Estates and Future Interests, (2d ed.) sec. 309; *Stevens* v. *VanBrocklin, supra; Benson* v. *Tanner,* 276 Ill. 594; *Ætna Life Ins. Co.* v. *Hoppin,* 249 id. 406.) In *Harvard College* v. *Balch,* 171 Ill. 275, Mr. Justice Cartwright, in delivering the opinion of the court, said: "A contingent remainder is one that is limited to take effect either to a dubious or uncertain person or

upon a dubious or uncertain event. It is limited by the instrument creating it, either to a person not yet ascertained or not in being, or so as to depend upon a dubious and uncertain event which may never happen. * * * The uncertainty which distinguishes it is not the uncertainty whether the remainderman will ever enjoy it, but the uncertainty whether there will ever be a right to such enjoyment." Conversely, if the person to take the remainder is *in esse* the remainder is vested. Again, the court, in *Jones* v. *Miller, supra,* observed: "The main thing which distinguishes a vested from a contingent remainder is its present capacity to take effect in possession in a determinate person immediately upon the determination of the particular estate. In the one case there is a person in being ascertained and ready to take with a present right of future enjoyment, while in the other there is either no ascertained person in being ready to take immediately upon the determination of the particular estate or it is uncertain whether the event upon which the estate is to vest will ever happen. It is the uncertainty of the right to take the property, and not the enjoyment of it, that distinguishes a contingent from a vested remainder."

In the light of the foregoing authorities it is clear that the devise to the unborn children of D. F. Carter was a contingent remainder, and since there was no one *in esse* to take the remainder, a reversion was created by operation of law. "Whenever one seized in fee created out of his fee a lesser estate of freehold—as an estate tail, or a life estate—after the expiration of the less estate, the owner in fee would have the fee which he had not wholly parted with. The less estate is called the *particular estate,* and what is left in the owner in fee is called, during the continuance of the particular estate, the *reversion.*" (Kales on Estates and Future Interests, (2d ed.) sec. 24.) A reversion thus arises solely by operation of law. It follows that a void devise can create no reversion, because the tes-

tator has not devised anything. Conversely, a valid devise, which may be defeated for lack of beneficiaries, leaves a reversionary interest in the testator. It is competent, therefore, for him to grant such reversion by deed or by will, and if by will the devise may be contained in the same instrument creating the remainder or in a subsequent will. *Fisher* v. *Easton, supra; Akers* v. *Clark*, 184 Ill. 136.

*Fisher* v. *Easton* is cited by the defendants as squarely in point. The testator in that case devised certain real estate to Mary C. Burch, (referred to in his will as Mae C. Burch,) a daughter, for life and at her death to the heirs of her body, if any, and in the event she had none at the time of her death, then to another daughter, Lillie Easton. By the third clause of his will the testator devised and bequeathed all the residue of his real and personal property to his two daughters, share and share alike, without reservation. This court, in holding that the devise first mentioned created alternative contingent remainders and that the reversion left in the testator passed to his two daugters under the residuary clause, said: "The first limitation is necessarily a contingent remainder. It is a limitation to dubious and uncertain persons because of the fact that such persons were undetermined and could not be determined until birth of such issue and the death of Mary C. Burch leaving issue surviving her, and it was uncertain whether or not there ever would be any persons answering the description of heirs of the body of Mary C. Burch. The limitation to Lillie Easton must therefore also be held to be a contingent remainder, because her taking depends upon a dubious and uncertain event—the death of the life tenant without leaving at the time of her death heirs of her body. The remainder after the life estate being contingent, all of the estate of the testator was disposed of by the second clause of the will except the reversion in fee created by operation of law. * * * This reversion in fee is a vested interest and therefore indestructible. It was such an inter-

est as might be conveyed by will or by deed.  *  *  *  The moment the testator made the devise in the second clause of the will there was no further estate to devise in that land except the reversion in fee arising by mere operation of law.  He could devise it or convey it by another will or deed to any person he pleased, and devising it by the same will to the life tenant and her sister by the residuary clause, if he did so, could not have the effect to change it into an executory devise or a contingent, destructible remainder. It would still continue to be a reversion in fee, a vested interest and indestructible, and still capable of being transferred by deed or devised by will by the heirs and the residuary devisees."

The grantor, William Clark, in *Akers* v. *Clark, supra,* conveyed a life estate to Mary J. Clark, his wife, by a deed which provided that upon her death the land should revert to his heirs.  It will be observed that this provision was without legal effect because the grantor had conveyed merely a life estate and the unconveyed portion would at his death descend to his heirs if he died intestate.  Thereafter Clark made a will, by which he devised the remainder to one daughter to the exclusion of his other children.  Following the death of Clark and his wife the children not named in the will brought a partition suit, claiming that by the deed their father had intended to convey the remainder in fee to all of his children and that the subsequent devise to his daughter of that remainder was inoperative.  The court, in disposing adversely to their contention, said: "Without, however, rejecting any word in the conveyance, by the terms of the deed the heirs would take as reversioners and not as remaindermen.  *  *  *  By the deed in this case no vested interest passed to anyone but Mary J. Clark.  The remainder, after the expiration of her life estate, under the law as well as under the deed, reverted to the grantor or his heirs.  He being a reversioner first in order of time, might dispose of the fee absolutely by will

or by deed." Similarly, in the present case D. F. Carter at all times had the reversion, and being first in line he enjoyed the right to convey it by deed or devise it by will. This right he exercised in the residuary clause of his last will and testament.

The presumption obtains that a testator intended to dispose of all his property and leave no part of it intestate. Specifically, the presumption with respect to a residuary clause is that the testator intended it to include everything not effectually devised or disposed of, and it should be construed to prevent intestacy as to any part of the testator's estate unless there is an apparent intention that the property should be excluded from the will. (*Wingard* v. *Harrison,* 337 Ill. 387; *Dunn* v. *Kearney, supra; Martin* v. *Martin,* 273 Ill. 595; *Felkel* v. *O'Brien,* 231 id. 329.) The real estate described in clause 2 of the will of D. F. Carter passed under the third or residuary clause of his will to Juranda C. Carter.

To support their contention that the marriage between D. F. Carter and Juranda C. Carter, who were first cousins of the half-blood, was incestuous and void, the plaintiffs have recourse to section 1 of the Marriage act as amended in 1887 and in force when the marriage was solemnized. (State Bar Stat. 1935, p. 2044; Smith-Hurd Stat. 1935, p. 2036;) which declares marriages, among others, between cousins of the first degree to be illegal.) Our disposition of the principal contention, however, renders it unnecessary to consider this contention, as Juranda C. Carter was entitled to the farm as the residuary devisee, conformably to the plain intent of clause 3 of her husband's will.

The decree of the circuit court is affirmed.

*Decree affirmed.*