*In re* ESTATE OF ALICE A. KIRCHWEHM, Deceased (Doris J. O'Donnell, Successor Trustee under the Last Will of Harriet McKean, Deceased, Plaintiff-Appellee, v. Ignatius Navicky, a/k/a Ignatius Navicki, a/k/a Enoch Navicky, *et al.*, Defendants (Ignatius Navicky, a/k/a Ignatius Navicki, a/k/a Enoch Navicky, *et al.*, Defendants-Appellants)).

First District (2nd Division)   No. 1—90—1635

Opinion filed March 28, 1991.

John M. Morrone, P.C., of Palos Heights (John M. Morrone, of counsel), for appellants.

Shaheen, Lundberg, Callahan & Orr, P.C., of Chicago (Henry N. Novoselsky, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Appellants seek review of the circuit court's order which approved trustee's final report and accounting and granted the trustee's motion for summary judgment regarding Alice Kirchwehm's (Alice's) exercised testamentary power of appointment. The issues raised on appeal are whether (1) the language of Alice's will indicates an intent to exercise her power of appointment in favor of the descendants of the predeceased named beneficiaries, and (2) Alice's will contains a constructional ambiguity.

Harriet McKean (Harriet) died on December 28, 1972, leaving a will and codicil, later admitted to probate, which provided for the creation of a testamentary trust, naming Melvin Kirchwehm (Melvin) as trustee, and Alice, his wife, as successor trustee, in the event of his death. Through her will, Harriet directed the trustee to pay from the trust any amounts necessary for the support and care of Harriet's sisters, Ethel Roche (Ethel), Mildred Kramer (Mildred), and Alma Kirchwehm (Alma), during their respective lifetimes. Alma predeceased Harriet.

The codicil provided that upon the death of the last of her sisters, the entire balance of the trust would pass to Melvin, or, if Melvin had died, to Alice. If Alice failed to survive any of Harriet's sisters, Alice was given the power to appoint, by her own will, the persons who would receive the corpus of the trust estate.

Harriet died. Melvin became and remained trustee until his own death in 1973. Alice thereafter accepted appointment and performed as successor trustee until October 16, 1980, when she was adjudged a disabled person. The circuit court appointed Doris O'Donnell (Doris) as successor trustee, to which the then two surviving trust beneficiaries, Ethel and Mildred, consented. Ethel died childless on December 2, 1983. Mildred, the last of Harriet's sisters, died childless on January 31, 1989.

Alice died on April 28, 1984. Her will, dated October 15, 1974, and duly admitted to probate, provided in part:

"*Fifth*: *** Further, under the provisions of Article II, Paragraph D of [the] Will and Codicil [of Harriet McKean] and upon

the death of both MILDRED KRAMER and ETHEL ROCHE, I was given the power to appoint by my Will to such persons or entities as I might choose the balance then remaining of the Trust Estate.

In accordance with and in pursuance of such power of appointment and in case I shall predecease said ETHEL ROCHE and MILDRED KRAMER, I appoint the balance of the said Trust Estate, including all accrued and undistributed income derived therefrom to *those persons named in Paragraph SIXTH* of this, my Last Will and Testament *who shall be living at the time of the death of the survivor of MILDRED KRAMER and ETHEL ROCHE*, and in the proportions set opposite their respective names, and *in case of the death of any of them the then survivors shall take the share or portion otherwise distributable to such decedent in said proportions*. [Emphasis added.]

\* \* \*

*SIXTH*: All the rest, residue and remainder of my estate \*\*\* I give, devise and bequeath to the following-named persons in the proportions set opposite their respective names:

| | | |
|---|---|---|
| ESTELLE JACKSON HALLE | — | 20 Per Cent |
| IGNATIUS NAVICKI | — | 10 Per Cent |
| JOSEPH NAVICKI | — | 10 Per Cent |
| SYLVIA RUSBASAN | — | 15 Per Cent |
| JUNE GRIGONIS | — | 5 Per Cent |
| JOAN GRIGONIS | — | 5 Per Cent |
| DORIS O'DONNELL | — | 20 Per Cent |
| GLORIA WOLFLICK | — | 10 Per Cent |
| WILLIAM RUSBASAN | — | 5 Per Cent |

Provided that if any of said persons predecease me, then the share or portion which any such deceased would take if living at the time of my death shall go and be paid over and delivered to the respective lawful issue of any such deceased living at the time of my death, *per stirpes*; and if any such deceased shall leave no lawful issue surviving, then the share or portion which any such deceased would take if living at the time of my death shall go and be paid over and delivered proportionately to those of the above-named persons who may be living at the time of my death."

Joseph Navicki, a/k/a Joseph Navicky, predeceased Mildred, leaving as his surviving lawful issue Joseph Navicky, Jr., Richard Navicky, and Natalie Nicoletti (appellants). Further, Estelle Jackson Halle pre-

deceased Mildred, leaving as her surviving lawful issue Doris and Gloria Wolflick.

When Mildred died, Doris, as successor trustee, sought to distribute the trust corpus in accordance with the appointment made in paragraph fifth of Alice's will. She proposed that the shares of Joseph Navicky and Estelle Jackson Halle be divided among the named appointees then living according to the proportions opposite their names.

Ignatius Navicky and Joseph Navicky, Jr., thereafter demanded that the children of Joseph Navicky, who predeceased Mildred, take their father's lapsed share *per stirpes*. All the other trust beneficiaries approved Doris' report and proposed distribution.

Doris filed a complaint for construction of Alice's will and for circuit court approval of her final account on October 13, 1989. A stipulation as to uncontested facts was entered by the parties. Appellants filed a motion for summary judgment, and Doris filed two motions: one for partial summary judgment or summary determination of major issues, and the other for partial summary judgment regarding the interpretation of Alice's appointment. Doris' motion for summary determination of major issues was allowed, and the court approved the trustee's final report. Further, the court granted Doris' motion for partial summary judgment regarding Alice's appointment, concluding that the surviving appointees named in paragraph sixth of Alice's will would share the portions of the two deceased appointees in the stated proportions. The court made a specific finding that there was no just reason to delay enforcement or appeal of the order. This appeal followed.

Appellants first argue that Alice's will clearly indicates an intent to exercise her power of appointment in favor of the descendants of the named appointees who predeceased Mildred because reference to paragraph sixth, the residual clause, demonstrated an intent to dispose of the trust corpus in the same manner provided for distribution of the residue.

■ The cardinal rule of will construction, to which all other rules yield, is the ascertainment of a testator's intention from the will itself. (*Vollmer v. McGowan* (1951), 409 Ill. 306, 311, 99 N.E.2d 337.) The intention of the testator is determined by perusing the words used in the will for actual meaning before applying rules of construction. *Hoge v. Hoge* (1959), 17 Ill. 2d 209, 212, 161 N.E.2d 117.

■ The language of Alice's will indicates that by paragraph fifth she intended to exercise her power of appointment in favor of the nine appointees listed in paragraph sixth; and that those of the nine

who were living would share the portions of those listed who had died before Mildred and Ethel had expired. The reference in paragraph fifth to paragraph sixth is for the sole purpose of identifying the specific appointees. Unlike paragraph fifth, paragraph sixth disposes of the residue; the provision for distribution *per stirpes* applies only to the residual estate.

Appellants argue that paragraph sixth should be deemed to have been incorporated by reference into paragraph fifth of the will. The testator's intention, however, must be gathered from the will as a whole, giving effect and meaning to each and every clause if possible. (*Stites v. Gray* (1954), 4 Ill. 2d 510, 513, 123 N.E.2d 483.) Appellants' proposed construction would render meaningless and ineffective the provision in paragraph fifth establishing the class of named persons and dealing with the death of any of the beneficiaries. Further, the doctrine of incorporation by reference generally involves extrinsic documents and, as such, does not apply here. See *In re Estate of Meskimen* (1968), 39 Ill. 2d 415, 417, 235 N.E.2d 619.

Appellants also argue that the language in paragraph fifth is confusing and incoherent. They contend that the term "survivors" is ambiguous and that the court ought to change the wording of the paragraph to comport with Alice's alleged intent.

■ When the term "survivor" is used in conjunction with a gift to a group or class of beneficiaries, as in this case, under the common law, that term is deemed to indicate the intention of the testator that, should any member of the class predecease the testator, the share of the deceased beneficiary goes to the remaining named members of the class, rather than to the children or issue of the deceased beneficiary. (*In re Estate of Carlson* (1976), 39 Ill. App. 3d 281, 284, 350 N.E.2d 306; *Waugh v. Poiron* (1942), 315 Ill. App. 78, 81-82, 42 N.E.2d 138.) In *Carlson*, the testator, through his will, gave all his property to three named nieces and nephews, "or their survivors or survivor, share and share alike." (*Carlson*, 39 Ill. App. 3d at 283.) The court held that this language was not ambiguous; the deceased nephew's share passed to the surviving niece and nephew and not to the child of the deceased nephew. *Carlson*, 39 Ill. App. 3d at 285.

■ Similarly, in the present case, Alice used the language "and in case of the death of any of them the then survivors shall take the share or portion otherwise distributable to such decedent in said proportions." The term "them" clearly refers to the nine named appointees in paragraph sixth. Further, this disposition is made in a single sentence; the descendants of the named appointees are not mentioned until paragraph sixth. (See *Carlson*, 39 Ill. App. 3d at 285; *Waugh v.*

*Poiron*, 315 Ill. App. at 80-81.) Finally, if Alice had intended the property to pass to the descendants of the appointees *per stirpes*, she could have used the precise language that was employed in paragraph sixth.

Our supreme court has held that "[a] court does not acquire jurisdiction to construe a will merely by allegation that a question requiring construction exists, when the record shows there is no such question." (*Mitchell v. Snyder* (1949), 402 Ill. 279, 286, 83 N.E.2d 680.) The language used by Alice in this case is not ambiguous. No utilization of rules of construction to interpret the will is necessary.

■ Lastly, appellants urge the court to use its "inherent equitable powers" to find in their favor, since to do so would not deprive any of the appointees of their share; it would simply reduce their take by the amount of Joseph Navicky's share to which they otherwise would be entitled. A court may not distribute the testator's estate according to the court's sense of equity and justice, however, rather than the testator's intent as expressed in the will. *Continental Illinois National Bank & Trust Co. v. Bailey* (1982), 104 Ill. App. 3d 1131, 1139, 433 N.E.2d 1098.

■ There is no basis upon which to disturb the circuit court's order granting summary judgment in Doris' favor. The presence or absence of an ambiguity in a document is a question of law. (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 540, 510 N.E.2d 1057, *appeal denied* (1987), 116 Ill. 2d 555.) When all parties file for summary judgment, the court may decide the issues thus presented as a question of law and the entry of summary judgment for one party or the other is proper. (*Bresler*, 159 Ill. App. 3d at 540; *Comisky v. Farm Dealer Supply, Inc.* (1981), 99 Ill. App. 3d 807, 809, 426 N.E.2d 16.) Here, both parties moved for summary judgment, and all the material facts were before the circuit court. The court resolved the question of law in Doris' favor. Appellants do not allege on appeal that the circuit court misapplied the law; they only raise matters of alleged factual dispute in support of their claim that the court erred in granting Doris' motion for summary judgment.

From the foregoing it is manifest that no genuine issue of material fact exists; summary judgment was properly entered in Doris' favor and we must affirm.

Affirmed.

SCARIANO, P.J., and COCCIA, J., concur.